EILEEN MITCHELL vs. ARAGAM SUBRAMANYA.

No. 88-P-130.

Worcester. November 15, 1988. — May 25, 1989.

Present: ARMSTRONG, KAPLAN, & BROWN, JJ.

*Emotional Distress. Actionable Tort. Doctor*, Duty to disclose to patient. *Practice, Civil*, Discovery. *Evidence*, Right to obtain evidence, Medical records.

In a civil action in which the plaintiff alleged that the defendant physician wrongfully refused to furnish the plaintiff with her medical record and in which damages were sought for the refusal and for extreme and outrageous conduct intended to cause emotional distress, summary judgment on both claims was properly entered for the defendant, where the defendant had furnished the plaintiff with a summary of her record, in compliance with a regulation of the Board of Registration in Medicine, 243 Code Mass. Regs § 2.07 (13) (b) (1985), which gave him discretion whether to provide her with the entire medical record in his possession, or a summary thereof. [367-369]

CIVIL ACTION commenced in the Superior Court Department on June 18, 1985.

A motion for partial summary judgment was heard by *William C. O'Neil, Jr., J.*

*David A. Wojcik* for the plaintiff.

*Michael R. Mosher* for the defendant.

ARMSTRONG, J. In 1983, Eileen Mitchell, then twenty-two years old, was diagnosed as having a serious jaw cancer (specifically, adenoid cystic carcinoma, right parotid gland), which was partially but not wholly removed by surgery in August of that year. She underwent several months of both radiation and chemotherapy. She has some facial paralysis and numbness which resulted, apparently necessarily, from the operation. In 1985 she brought suit against Dr. Subramanya, a physician specializing in ear, nose, and throat disorders, for failure to

diagnose the cancer when she saw him eleven months before the diagnosis in 1983 by another physician (to whom Dr. Subramanya had referred her). The malpractice claim, count I of Mitchell's amended complaint, was rejected by a tribunal. She posted the required bond, however, and, so far as the record before us discloses, the malpractice count is still pending.

Mitchell was given leave to amend her complaint to add two counts relative to Dr. Subramanya's reluctance to furnish her with her medical records. Counts II and III allege, as fleshed out by affidavits, that Mitchell went to Dr. Subramanya's office with a friend in June, 1984, asking for copies of her records. This was refused. She sat down with the doctor, who let her start to read the records but, apparently thinking twice about it, took them back again before she was finished. He discussed with her what she was looking for and why. At some point she took the records a second time, but he took them back when she started to make notes. When she left she was very upset, shaking and crying, and she remained upset, to the point of vomiting, for several days. On June 18, her counsel sent a letter to Dr. Subramanya asking for copies of the records. On June 29, Dr. Subramanya furnished a summary. Further requests for copies of the records were refused. Counsel finally obtained the copies by discovery after the suit was commenced in 1985, but also after the medical malpractice tribunal had heard the matter.

In count II Mitchell sought damages for Dr. Subramanya's refusal to furnish the records voluntarily, claiming as damages, in part, the cost of the bond she was required to post. Count III alleged the tort of extreme and outrageous conduct intended to cause emotional distress, the cause of action defined in *George* v. *Jordan Marsh Co.*, 359 Mass. 244, 255 (1971), and *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 144-145 (1976). On these counts the judge allowed Dr. Subramanya's motion for summary judgment, and a partial final judgment was entered under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). The case is here on Mitchell's appeal from that partial judgment.

The physician's duty to furnish medical records to his patient is not so unqualified as Mitchell would wish. The duty is defined by regulations of the Board of Registration in Medicine, which, by what is now the sixth paragraph of G. L. c. 112, § 5,[1] is authorized to "adopt rules and regulations governing the practice of medicine." The duty, as so defined, is set out in 243 Code Mass. Regs. § 2.07(13)(b) (1985):

> "A licensee shall provide a patient or, upon the patient's request, another licensee or another specifically authorized person, with the following: 1. A summary which includes all relevant data, of that portion of the patient's medical record which is in the licensee's possession, or a copy of that portion of the patient's entire medical record which is in the licensee's possession. It is within the licensee's discretion to determine whether to make available a summary or a copy of the entire medical record."

Mitchell's contention that § 2.07(13)(b) is inconsistent with G. L. c. 231, § 60B, fifth par., is unpersuasive. Section 60B, the medical malpractice tribunal statute (inserted by St. 1975, c. 362, § 5), states that "[a]dmissible evidence [before the tribunal] shall include . . . hospital and medical records . . . ."; but it says nothing about access to the records. In any event, § 60B comes into play only after a malpractice action has been filed, at which time the patient can compel production of the actual records (or copies of the actual records) under Mass.R.Civ.P. 34(b), 385 Mass. 1212 (1982).[2] There is no

---

[1] The general rule-making authority appears in the sixth par. of § 5 as that section was amended by St. 1986, c. 351, § 13. The authority predates the 1986 statute, however. See § 5, as appearing in St. 1975, c. 362, § 3.

[2] Although rule 34(b) gives the physician forty-five days from the service of the complaint and thirty days from a request for production to respond thereto, the plaintiff may ask the court to compel production in a shorter time. Section 60B calls for the malpractice tribunal to hear the case "within fifteen days after the defendant's answer has been filed." In this case the action was filed on June 18, 1985; service was made on the defendant October 16; the answer was filed December 20; and the malpractice tribunal

conflict between a regulation giving a patient limited access to his medical record regardless of litigation, and discovery rules which give a party a broader right to access in connection with pending litigation. The judge correctly ruled that Mitchell was not entitled to a copy of her record if she was given, as she was on June 29, 1984, a summary of the record. Absent a duty to furnish the actual record, Dr. Subramanya cannot be said to have engaged in extreme and outrageous conduct by refusing to produce it until compelled by discovery. The physician's knowledge that the patient may be upset and distressed by the refusal cannot require him to forgo the discretion that the regulation gives him with respect to access to his records.

After hearing and tentatively allowing the motion for summary judgment, the judge permitted Mitchell to file a further affidavit and memorandum in opposition to the motion. The further affidavit, expanding on a point made in conclusory fashion in an earlier affidavit, alleged that when Mitchell started to take notes from the record in the doctor's office, she wrote (before the doctor took the record back) the words: "6/23/82 painful lump ramus of mandible." She attached the writing to her affidavit. (Nothing else is written on the paper.) The summary that the doctor furnished on June 29, 1984, did not include those words but instead stated: "Examination at that time [June 23, 1982] showed, over the right side of the cheek, over the ramus of mandible posteriorly, a firm area felt and in the recess, behind the mastoid tip and the ramus of mandible, a firm area felt which was slightly tender and did not move." The judge correctly ruled that the difference in phraseology fell short of demonstrating that the doctor had furnished an incomplete or inaccurate summary of the record. Similarly unavailing is the further allegation that the words written by

met and issued its report on either January 21 or January 23, 1986.

Moreover, Mitchell could have petitioned the medical malpractice tribunal to subpoena the actual records for her, or request that the tribunal examine the records for themselves. According to G. L. c. 231, § 60B, "[t]he tribunal may upon the application of either party or upon its own decision summon or subpoena any such records or individuals to substantiate or clarify any evidence . . . ." The appellant never requested that the tribunal summon the records.

Mitchell on the piece of paper did not appear on the purported actual records furnished by the doctor in response to discovery. That fact may be useful at the trial of the malpractice count in suggesting that the doctor altered the record sometime after June, 1984, presumably to cover up evidence of negligence; but logically it has nothing to do with the subject of counts II and III: the doctor's refusal to give a copy of the record to Mitchell in early June, 1984. The judge did not err in ordering the dismissal of counts II and III.

*Partial judgment affirmed.*