DOLORES ANN BOYLE vs. JOHN H. WENK.[1]

Suffolk.    April 5, 1979. — August 1, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Practice, Civil,* Directed verdict. *Emotional Distress. Actionable Tort.*

In an action to recover damages for the intentional or reckless inflic-
tion of emotional distress, evidence that the defendant repeatedly
harassed the plaintiff after she told him not to call and informed
him that she had recently been discharged from a hospital and that,
as a result of the defendant's conduct, the plaintiff suffered emo-
tional and physical damage was sufficient to warrant the denial of
the defendant's motions for a directed verdict and for judgment
notwithstanding the verdict. [595-598]

TORT. Writ in the Superior Court dated August 12,
1971.

The action was tried before *Dimond, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*John L. Mason, Jr.,* for the defendant.

*Joseph M. Orlando* for the plaintiff.

ABRAMS, J. The sole issue raised by this appeal is the
sufficiency of the evidence in an action for the intentional
or reckless infliction of emotional distress. The defend-
ant, John H. Wenk, asserts that it was error for the judge
to deny his motion for a directed verdict, and after the

---

[1] The complaint named Dolores Boyle and her husband William as
plaintiffs, and Wenk and his employer Martin B. Krebs and Consult-
ing Investigators, Inc., as defendants. William Boyle dismissed his
claims against all defendants. Dolores Boyle dismissed her claim
against Krebs. The jury returned verdicts for Boyle against both Wenk
and Consulting Investigators, Inc., in the amount of $7,500. Consult-
ing Investigators, Inc., did not appeal.

verdict to deny his motion for a judgment notwithstanding the verdict. See Mass. R. Civ. P. 50, 365 Mass. 814 (1974). Wenk claims that his conduct, while rude and clumsy, was neither "extreme and outrageous" nor was it "beyond all possible bounds of decency." Hence he concludes it was error to submit Dolores Boyle's claim for the intentional infliction of emotional distress to a jury. We find no error; therefore, we affirm the judgment.

In reviewing the denial of Wenk's motion for a directed verdict,[2] we view the evidence most favorable to Boyle. See *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 876 (1978). Moreover, we must determine "whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.' " *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978), quoting from *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972).

Wenk was employed by Consulting Investigators, Inc., to do private investigative work.[3] Wenk was asked to investigate the health and capacity for work of one John Walsh.

Walsh is the plaintiff's brother-in-law; he and his wife live in an apartment upstairs from the Boyles' home. In the course of his investigation Wenk called the Boyle home and began asking personal questions about Walsh. The plaintiff suggested to Wenk that he call Walsh directly; she also asked Wenk not to call again as she had just been discharged from the hospital.[4]

---

[2] We transferred Wenk's appeal to this court from the Appeals Court on our own motion.

[3] Liberty Mutual Insurance Company hired Consulting Investigators, Inc., who in turn hired Wenk, to investigate John Walsh's health and capacity for employment. Boyle listed Liberty Mutual as a defendant in her amended complaint, but subsequently voluntarily dismissed that claim.

[4] Boyle had been discharged from the hospital two days earlier after giving birth to her second child.

In spite of the plaintiff's request, the next week Wenk
called the plaintiff's home at 1 A.M. The plaintiff was
alone with her children,[5] and she was disquieted by the
late hour of the call. She told Wenk not to call again and
hung up. After the call the plaintiff was fearful, upset,
and unable to sleep. The next week Wenk appeared at the
Walsh apartment; Mrs. Walsh invited Boyle upstairs.
When asked, Wenk admitted that he had been calling
Boyle. The plaintiff told Wenk that he "had [her] terri-
fied."

Then Wenk asked Walsh what he did for a living, and
Walsh answered that he "robbed banks." In Boyle's pres-
ence, Wenk retorted that he had been "in prison too for
rape." The police were summoned.

When two police detectives arrived, the police observed
that Boyle was crying and agitated. The detectives asked
Wenk to identify himself, and Wenk responded, "I'm a
police officer." When challenged, Wenk admitted he was
engaged in private investigative work.

Boyle, Wenk, the Walshes, and the detectives went to
the police station. Boyle was weeping. At the police sta-
tion she became weak and sick due to hemorrhaging.
Blood was observed on Boyle's chair after she left the
station to seek medical assistance.

Boyle was under a physician's care for an extended
period of time after these events. Boyle also sought the
assistance of a psychiatrist. There was ample medical
evidence as to Boyle's injuries, as well as evidence of a
causal relationship between Boyle's emotional condition
and the phone calls from Wenk.[6]

Wenk asserts that as a matter of law these facts do not
evidence the "extreme and outrageous" conduct neces-
sary to support a claim for intentional or reckless inflic-
tion of emotional distress. See *George* v. *Jordan Marsh
Co.*, 359 Mass. 244, 255 (1971).[7] He emphasizes that recov-

---

[5] Boyle's husband was working a night shift.

[6] Wenk is not challenging the sufficiency of the medical evidence.

[7] Due to Boyle's physical injuries, this case is analogous to *George* v.

ery is barred unless his conduct was "beyond all possible bounds of decency," and "utterly intolerable in a civilized community." *George, supra* at 254-255. *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 145 (1976). Restatement (Second) of Torts § 46, Comment d (1965). Further, Wenk claims, hurt feelings resulting from bad manners, or relatively minor annoyances do not justify recovery for intentional or reckless infliction of emotional distress. See *George, supra* at 253-254. See Restatement (Second) of Torts § 46, Comment d (1965). See generally Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv. L. Rev. 1033, 1053-1064 (1936). We do not quarrel with Wenk's statement of the applicable principles.

However, in our view, Wenk did engage in a pattern of conduct which a jury could find was extreme and outrageous, exceeding mere insult or minor annoyance. Wenk's conduct may reasonably be viewed as an attempt to intentionally shock and harm a person's "peace of mind" by invading the person's mental or emotional tranquility.

The flaw in Wenk's argument is that he isolates each individual incident and ignores the fact that the jury are entitled to draw reasonable inferences from the totality of circumstances. See *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978). Repeated harassment, such as that engaged in by Wenk, may compound the outrageousness of incidents which, taken individually, might not be sufficiently extreme to warrant liability for infliction of emotional distress. See *George, supra* at 246; *Duty* v. *General Fin. Co.*, 154 Tex. 16, 18 (1954); *Samms* v. *Eccles*, 11 Utah 2d 289, 290 (1961); Prosser, Insult and Outrage, 44 Calif. L. Rev. 40, 48-49 (1956). Contrast *Public Fin. Corp.* v. *Davis*, 66 Ill. 2d 85, 92-93 (1976).

---

*Jordan Marsh Co.*, 359 Mass. 244, 255 (1971). Cf. *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 146-147 (1976). Boyle did not allege a cause of action for negligent infliction of emotional distress. See *Dziokonski* v. *Babineau*, 375 Mass. 555, 558-562 (1978).

Significantly, Wenk's conduct continued even after Dolores Boyle, in the first call, had told him not to call again.[8] See *George, supra* at 245-246; *Dawson* v. *Associates Fin. Servs. Co. of Kansas, Inc.,* 215 Kan. 814, 817, 825 (1974). The issue whether Wenk's conduct was extreme and outrageous is raised by his continued harassment of Boyle after he knew that she had just returned from the hospital. Conduct otherwise reasonable may become tortious when directed at an individual known to be particularly susceptible to infliction of emotional distress. Restatement (Second) of Torts § 46, Comment f, Illustrations 9-11 (1965).

Though there is no evidence that Wenk knew the precise nature of Mrs. Boyle's physical susceptibility, his knowledge that she had just returned from the hospital put him on notice that she might be more vulnerable to harassment or verbal abuse. See *Dawson* v. *Associates Fin. Servs. Co. of Kansas, Inc.,* 215 Kan. 814, 825 (1974) (victim with multiple sclerosis); *Delta Fin. Co.* v. *Ganakas,* 93 Ga. App. 297, 298-299, 300 (1956) (victim was child aged eleven years). Prosser, 44 Calif. L. Rev. 50. Martin, A Creditor's Liability for Unreasonable Collection Efforts: The Evolution of a Tort in Texas, 9 S. Tex. L.J. 127, 138-140 (1967). Yet Wenk persisted in intentional conduct which caused Boyle to suffer serious physical and emotional damage. It is for the jury in such instances to decide whether Wenk's conduct was "rude and clumsy" or "extreme and outrageous."

We are mindful of the need for limits on recovery for intentional or reckless infliction of emotional distress: "No pressing social need requires that every abusive outburst be converted into a tort; upon the contrary, it would be unfortunate if the law closed all the safety valves

---

[8] We note that the Legislature has labeled unreasonable attempts to collect personal or family debts by communication at an unreasonable hour, or with unreasonable frequency, or by use of offensive language. G. L. c. 93, § 49.

through which irascible tempers might legally blow off
steam."[9] Magruder, *supra* at 1053. Moreover, the courts
must be particularly wary in this area to avoid fictitious
claims. *Agis, supra* at 143.[10] Hochman, "Outrageousness"
and Privilege in the Law of Emotional Distress — A
Suggestion, 47 Cornell L.Q. 61, 63 (1961).

However, where a person engages in intentional con-
duct which is designed to, and actually does, result in
severe emotional and physical damage, the possibility of
trivial or fictitious claims does not justify denial of recov-
ery to the victim. *Agis, supra* at 143-145. *State Rubbish
Collectors Ass'n* v. *Siliznoff,* 38 Cal. 2d 330, 338-339
(1952). *Samms* v. *Eccles,* 11 Utah 2d 289, 291 (1961). W.
Prosser, Torts 50-51 (4th ed. 1971). There is an issue for
the jury if reasonable people could differ on whether the
conduct is "extreme and outrageous." *Agis, supra* at 145-
146.

Finally, Wenk argues that the judge mistakenly be-
lieved that "it was the sole prerogative of the jury" to
determine liability in a case alleging infliction of emo-
tional distress. This contention is not supported by the
record.

The judge did express doubts concerning the sufficien-
cy of the evidence and indicated that he might grant a
motion for judgment notwithstanding the verdict if the
jury found for Dolores Boyle. The judge's comments indi-
cate that he carefully scrutinized the evidence before rul-
ing on Wenk's motions. Ultimately the judge concluded

---

[9] Wenk's conduct seems to have been more than a spontaneous
outburst. His conduct appears to have been a calculated tactic de-
signed to pressure reluctant persons to reveal information useful to
his investigation. See Wade, Tort Liability for Abusive and Insulting
Language, 4 Vand. L. Rev. 63, 72 (1950).

[10] In *Agis,* we allowed recovery for intentional or reckless infliction
of emotional distress, absent resulting physical injury. Where, as with
Dolores Boyle, the complained of conduct results in severe physical
injury, there may be less likelihood of a fictitious claim. See W. Pross-
er, Torts at 60 (4th ed. 1971). Prosser, Insult and Outrage, 44 Calif. L.
Rev. 40, 53 (1956).

that the evidence was sufficient to permit the jury to consider whether Wenk's conduct was in fact extreme and outrageous. See Restatement (Second) of Torts § 46, Comment h (1965); *Womack* v. *Eldridge*, 215 Va. 338, 342 (1974).[11] We find no error in the judge's conclusion.

*Judgment affirmed.*

---

[11] Wenk argues that in a case alleging infliction of emotional distress, a two-step process is required — first the judge must determine whether the conduct may reasonably be viewed as extreme and outrageous, and second, that the jury must determine whether the conduct was in fact extreme and outrageous. This is precisely the test outlined in Restatement (Second) of Torts § 46, Comment h (1965). See *Golden* v. *Dungan*, 20 Cal. App. 3d 295, 308 (1971). There is no indication in the record that the judge misunderstood or misapplied this test, which is the same test applied whenever a party to a civil proceeding makes a motion for directed verdict or judgment notwithstanding the verdict.