## Ramonita SANTIAGO–DE–CASTRO, Plaintiff,

### v.

## Victor MORALES–MEDINA, Defendant.

### Civ. No. 89–1358CC.

United States District Court,
D. Puerto Rico.

May 22, 1990.

As Amended June 28, 1990.

Rosalinda Pesquera–Dávila, Hato Rey, P.R., for plaintiff.

Héctor Rivera–Cruz, Secretary of Justice, Com. of Puerto Rico by Carlos E. Rodríguez–Quesada, San Juan, P.R., for defendant.

## JUDGMENT

CEREZO, District Judge.

This civil rights action, based upon an intentional tort, is before us on defendant's Motion for Judgment on the Pleadings filed on February 9, 1990 (docket entry 9). Plaintiff opposed the motion on March 12, 1990 (docket entry 11). The facts which give rise to complaint are as follows:

Plaintiff Ramonita Santiago-de-Castro is a tenured high school teacher who since 1983 had held a position as a Spanish teacher in the Trina Padilla de Sánz Public High School. The defendant Victor Morales–Medina holds the position of Director of that school, and during the period of August 1, 1988 through February 6, 1989 was plaintiff's immediate supervisor. Santiago-de-Castro alleges that during this period "... defendant Morales directly, continuously and consistently harassed [her] in many ways, among others, as follows...." The complaint goes on to list several incidents. In one, occurring August 28, 1988, Morales–Medina addressed her in a strident tone, berating her in the presence of students. In another, on September 12, 1988 he ordered her, in front of the class, "... in a crass and gross tone ...," to admit to the class a student she had previously turned away due to his tardiness. Later, upon learning that the student had allegedly brought administrative charges against her, in a letter, for violating his rights, Morales–Medina allegedly refused to release the letter to her so she could see its exact contents. Soon after, on September 27, 1988 she went to see her personnel file, but its whereabouts were unknown. Three days later Morales–Medina called her into his office to review her personnel file. He announced he would fire her and file charges against her, but refused to identify the charges. On November 14, 1988 he visited her classroom to evaluate her, told her she did not motivate her students and did not use the blackboard and was, therefore, not a good teacher. He refused to reduce this evaluation to writing. Immediately after this incident she sought help at the State Insurance Fund. She eventually transferred to the Escuela Libre de Música and "... until the present Morales has continued to call Santiago's actual co-workers over the telephone defaming Santiago and creating a[n] uncomfortable environment for her to work."

It is plaintiff's contention that this intentional infliction of mental anguish deprives her of her "right to perform her job free from such unwarranted practices." She claims to be suffering an anxiety disorder with depressive characteristics related to her employment, as well as unrelated costochondritis.

We note initially that there is no allegation of a discriminatory animus as the cause of this treatment. It apparently arises from strictly personal animosity.

The result of defendant's alleged actions has not been either a loss of employment as a career teacher.[1] There are no allegations of a diminishment of her duties, responsibilities or benefits. Rather, it appears from the complaint, taken in its entirety, that the cause of action is based entirely upon an allegedly intentional infliction of emotional damages arising from what she sees as verbal abuse by her superior.[2]

■ We first note that because 42 U.S.C. Section 1983 is not a general tort statute, but imposes liability only for rights secured by the Constitution and laws of the United States, it does not grant a cause of action for every injury wrongfully inflicted by a state officer. *Shillingford v. Holmes,* 634 F.2d 263, 264 (5th Cir.1981). *See also Baker Phosphate Corp. v. Muirhead,* 581 F.2d 1187 (5th Cir.1978). It is therefore necessary to consider the distinction between those personal injuries for which redress may be sought under section 1983 and those, however wrongful, which must be remedied under state law.

■ The threshold question of whether the facts as alleged amount to a constitutional deprivation is a question of law. *Shillingford, supra,* at 265.

Plaintiff relies heavily on *Gilmere v. City of Atlanta, Ga.,* 774 F.2d 1495 (11th Cir.1985), to support her contention that conduct so arbitrary, egregious and shocking can result in violations of a constitutional magnitude. The facts in *Gilmere* are distinguishable from those at bar, however. *Gilmere's* claims arose from the beating and shooting death of a decedent by means of excessive police force. Other egregious conduct discussed in *Gilmere* included the obtaining of incriminating evidence by subjecting the defendant to a stomach pump. Plaintiff correctly cites *Boyle v. Wenk,* 378 Mass. 592, 392 N.E.2d 1053 (1979), for the proposition that a series of "petty acts of harassment over a period of time can create severe distress" resulting in a claim of intentional infliction of distress. That case, however, a tort claim between private parties in a state court, neither raises nor addresses the question in terms of a constitutional claim.

Given the facts as alleged in the complaint, we find that the interactions between the parties fail to support a claim of constitutional violation. In dealing with the issue of harassment and similar problems, within the context of the claim that the allegedly violative behavior was politically motivated, the Court of Appeals for the First Circuit has recently stated:

> First, if the threshold for an actionable constitutional violation were low, we believe employees would too often resort to litigation when the employer's action was actually apolitical in nature. All employees, regardless of politics, may face a variety of lesser aggravations and inconveniences in the workplace, and a common catalogue of such non-political grievances.... Although the government employer could be expected to prevail in cases where there was no political motivation for the actions, we should discourage employees from drawing the courts into the day-to-day operations of government.

*Agosto de Feliciano v. Aponte Roque,* 889 F.2d 1209, 1216–17 (1st Cir.1989).

Difficulties in interpersonal relationships, animosity and competitiveness between co-workers, supervisory frustration and dissatisfaction with underlings, and the like are common problems in today's fast-paced, highly stressful workplace. We hesitate to become enmeshed in these disputes, merely because they occur in the public sector.

---

1. Plaintiff does indicate that she was transferred to the Escuela Libre de Música. It does not appear from the pleadings, however, that the transfer *per se* is a source of complaint.

2. Plaintiff's claim appears to be summarized in paragraph six of the complaint:
   Plaintiff is a tenured teacher, has a property right in her employment that is constitutionally protected under the provisions of the Fourteenth Amendment. Defendant's conduct harassing plaintiff as hereinbefore shown under the guise of supervision amounts to nothing less than the intentional infliction of mental anguish and deprives her of her right to perform her job free and from said unwarranted practices.

We draw no conclusion as to whether or not the facts state a claim for a relief under state law. We merely find that plaintiff has no federal constitutional right to perform her job free from the "unwarranted practices," presented in her complaint.

Accordingly, the defendant's motion for judgment on the pleadings is GRANTED and this action is hereby DISMISSED.

SO ORDERED AND ADJUDGED.