January 29, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 91-2306

FRANK THORPE,

Plaintiff, Appellant,

v.

MUTUAL OF OMAHA INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Bailey Aldrich, Senior Circuit Judge]

Before

Cyr and Boudin Circuit Judges,

and Hornby,* District Judge.

Edward J. McCormick, III was on brief for appellant.

Edward S. Rooney, Jr. was on brief for appellee.

* of the District of Maine, sitting by designation.

BOUDIN, Circuit Judge. Appellant Frank Thorpe sued

Mutual of Omaha Insurance Company ("Mutual of Omaha") for

alleged emotional distress and violation of Mass. Gen. L.

chs. 93A and 176D. The claims were based on Mutual of

Omaha's surveillance of Thorpe in connection with Thorpe's

receipt of disability benefits under an insurance policy.

Thorpe appeals from rulings below granting summary judgment

in favor of Mutual of Omaha on the statutory claims and

directing judgment for Mutual of Omaha on the emotional

distress claim. We affirm both rulings.

Thorpe is a former police officer who sustained serious

injuries, including a contusion to the heart, in an

employment-related automobile accident in 1975. As a result,

Thorpe retired from the police force and began collecting

monthly total disability benefits under a policy with Mutual

of Omaha. In order to verify Thorpe's continued eligibility,

Mutual of Omaha representatives regularly visited Thorpe at

his home and inquired into his daily activities and prospects

for rehabilitation.

Beginning in 1982, personal contact with Thorpe became

increasingly difficult; on several occasions, Thorpe either

was not at home or did not come to the door. The problem

reached a head in early 1983, when Mutual of Omaha was unable

to contact Thorpe at home despite repeated attempts.

Suspecting that Thorpe might be working during the day,

-2-

Mutual of Omaha began surveillance of Thorpe in April 1983.

On the second day of surveillance, Thorpe was driving his

former wife to work when he noticed that he was being

followed by another car. Thorpe took evasive action and

eventually ended up behind the tailing car, then being driven

by the insurance company's agent, Michael Boyd. According to

Thorpe and his former wife, Thorpe pulled up alongside Boyd's

car, at which point Boyd tried to ram his vehicle into

Thorpe's car before driving off, an allegation denied by

Boyd. As Thorpe was driving home, he experienced temporary

chest pains.

Undeterred, Mutual of Omaha resumed its surveillance of

Thorpe one month later, this time employing a professional

Pinkerton agent. Thorpe again realized that he was being

followed and, as with Boyd, claimed that the Pinkerton agent

tried to hit his vehicle. The Pinkerton agent denied trying

to hit Thorpe's car. The insurance company never established

that Thorpe was working and, to this day, he continues to

receive monthly disability payments.

On April 18, 1986, Thorpe brought this action against

Mutual of Omaha in the Superior Court of Massachusetts, the

case being then removed to federal court on diversity

grounds. Thorpe asserted claims for intentional and

negligent infliction of emotional distress and for violation

of Mass. Gen. L. chs. 93A and 176D. After some discovery,

-3-

Mutual of Omaha moved for summary judgement on all counts.

The district judge granted summary judgment only on the

statutory claims, ruling that the "demand letter" required

under chapter 93A did not sufficiently specify the injury

suffered and damages claimed by Thorpe.

The remaining tort counts were tried before a jury and a

different judge in November 1991. At the close of all the

evidence, Thorpe voluntarily dismissed his claim for

negligent infliction of emotional distress, leaving only the

intentional infliction claim to be decided by the jury.

Shortly after the jury began deliberations, the foreman

notified the trial judge in writing that the jury was

deadlocked five to one. Two more notes followed, one

describing the hold-out juror as possessing "deep ideological

beliefs that will not be changed by any arguments," and the

other saying that the hold-out "developed a bias" toward one

of the parties "during the course of the trial and

deliberations . . . ."

At this point, the trial judge considered declaring a

mistrial but, before doing so, posed the following questions

to the jury over the objections of Thorpe's counsel:

1. Did Mr. Boyd attempt to ram plaintiff's car?

2. Did Mr. Doucher (the Pinkerton agent) . . .
attempt to ram plaintiff's car?

The jury promptly answered both questions in the negative.

Having obtained these findings, the court discharged the jury

-4-

and directed "judgment as a matter of law" for Mutual of

Omaha, the rubric that has replaced directed verdicts and

judgments n.o.v. See Fed. R. Civ. P. 50. This appeal

ensued.

Thorpe's statutory claim rests upon Mass. Gen. L. ch.

93A, prohibiting unfair or deceptive acts or practices in the

conduct of trade or commerce.1 As a prerequisite to suit,

chapter 93A requires the submission of a demand letter

"reasonably describing the unfair or deceptive act or

practice relied upon and the injury suffered." Mass. Gen. L.

ch. 93A 9(3). The twin reasons for the demand letter are,

first, to encourage negotiation and settlement and, second,

to control the amount of damages recoverable by the

plaintiff. Slaney v. Westwood Auto, Inc., 366 Mass. 688,

704, 322 N.E.2d 768, 779 (1975). If a reasonable settlement

offer is rejected by the plaintiff, recovery will be limited

to the amount of the offer. Id.

The district court in this case found that Thorpe's

demand letter was specific about neither the alleged physical

harm sustained nor the damages requested. The letter from

Thorpe's lawyer, dated February 3, 1984, asserts that the

1Thorpe also invoked chapter 176D prohibiting unfair and
deceptive insurance practices, but that statute provides no
private cause of action and is enforceable only by the
commissioner of insurance. See Dodd v. Commercial Union Ins.

Co., 373 Mass. 72, 365 N.E.2d 802 (1977) (chapter 93A

encompasses unfair and deceptive insurance practices).

-5-

insurance company's "surveillance technics [sic] and

extensive harassment" inflicted on Thorpe "severe emotional

distress, as well as physical injuries, great pain of body

and mind, and mental anguish." There was, however, no

identification of any physical injuries and, when Mutual of

Omaha wrote back inviting Thorpe's attorney to identify and

provide evidence of "any specific injury or harm to your

client," its letter went unanswered. Thorpe's letter also

did not contain any damage figure which might have given some

dimension to his claims.

We agree with the district court that Thorpe's letter

did not satisfy the statute. The Massachusetts courts have

said that "[i]t is . . . essential that the complainant

define the injury suffered and the relief demanded in a

manner that provides the prospective defendant with `an

opportunity to review the facts and the law involved to see

if the requested relief should be granted or denied' and

enables him to make `a reasonable tender of settlement.'"2

Given the failure to specify at least the physical injuries

claimed, Thorpe's letter provided no adequate basis for the

insurance company to appraise the value of the claim or frame

a settlement offer. Thorpe's second ground for reversal

centers on the trial court's submission of questions to the

2Spring v. Geriatric Authority of Holyoke, 394 Mass.

274, 288, 475 N.E.2d 727, 736 (1985) (quoting Slaney, 366

Mass. at 704-05, 322 N.E.2d at 779).

-6-

jury on the issue of attempted "ramming" of Thorpe's car.

Federal Rule of Civil Procedure 49(a) permits the court to

require from the jury "a special verdict in the form of a

specific written finding upon each issue of fact." Thorpe

claims that the procedure was inappropriate in this case,

arguing that the jury did not return a general verdict, that

Rule 49 does not provide for submission of questions to a

deadlocked jury, and that one of the jurors was biased and

therefore incapable of answering the questions impartially.

The first two contentions were not made below.

Arguments not made to the district court in civil cases are

foreclosed on appeal unless their inclusion would "virtually

. . . insure appellant's success" and exclusion would result

in a "gross miscarriage of justice." Jones v. City of

Somerville, 735 F.2d 5, 7 (1st Cir. 1984). Rule 49(a)

explicitly permits special verdicts in lieu of general

verdicts, compare Fed. R. Civ. P. 49(b) (providing for a

general verdict with interrogatories), and while Rule 49 does

not specifically address the submission of questions to a

jury after a deadlock, neither does it expressly preclude

this practice. Patently, there was no clear violation of the

Federal Rules or any miscarriage of justice.

Thorpe's third argument, properly made at trial and

preserved for appeal, is that it was error to submit

questions to the jury because one of the jurors was biased.

-7-

The short answer is that the jury foreman's statements do not

establish or even strongly suggest bias in the technical

sense that would require removal of the hold-out juror or a

mistrial. Compare, e.g., United States v. Heller, 785 F.2d

1524 (11th Cir. 1986) (racial and religious slurs uttered by

jury members). For all that appears, the hold-out juror came

to a firm conviction based on the evidence at trial and

refused to budge. What were "ideological beliefs" to the

foreman may be "personal values" to the hold-out. At most

Thorpe might have been entitled to a voir dire inquiry; none

was sought; and the situation certainly did not require the

trial judge to order one sua sponte.

Lastly, Thorpe challenges the district court's entry of

judgment for Mutual of Omaha on the claim of intentional

infliction of emotional distress. In directing judgment on

this count, the trial court properly excluded from

consideration testimony on the subject of "car ramming," as

this issue was resolved by the jury in favor of Mutual of

Omaha. Still, Thorpe contends that the remaining evidence

elicited at trial was sufficient to submit to the jury his

claim for intentional infliction of emotional distress.

Thorpe first points out that a different judge had

earlier denied Mutual of Omaha's motion for summary judgment

on this claim, suggesting "reasonable minds could differ" and

the jury should therefore decide the matter. Cf. Anderson v.

-8-

Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). A denial

of summary judgment does not preclude a directed verdict on

the same claim. See, e.g., see Voutour v. Vitale 761 F.2d

812, 822-23 (1st Cir. 1985), cert. denied, 474 U.S. 1100

(1986). Evidence adduced at trial will almost always differ

in degree, force, and quantity from that submitted on a

motion for summary judgment. The earlier denial of summary

judgment standing alone in no way impeaches the later

directed verdict.

Turning to the evidence at trial, we note first that a

plaintiff claiming intentional infliction of emotional

distress under Massachusetts law must establish that the

actor intended to inflict emotional distress or knew or

should have known that emotional distress was the likely

result of his conduct; that the conduct was "extreme and

outrageous," "was beyond all possible bounds of decency," and

was "utterly intolerable in a civilized community;" that the

actions were the cause of the plaintiff's distress; and that

the emotional distress sustained by the plaintiff was

"severe" and of a nature that no reasonable person "could be

expected to endure." Agis v. Massachusetts, 377 Mass. 140,

144-45, 355 N.E.2d 315, 318-19 (1976). In our view, the

surveillance did not even arguably rise to the level of

"extreme and outrageous conduct," and the issue was properly

-9-

withdrawn from the jury.3 Once the claims of attempted car

ramming are removed from dispute, the behavior complained of

amounts to not much more than an insurance company's efforts

to determine the activities of a claimant whose receipt of

benefits was conditioned on his total disability.

Investigations of this sort are commonplace and to be

expected where disability claims are involved, particularly

where, as here, the claimant was from all outward appearances

often away from home during the day. However distasteful the

notion of surveillance, Mutual of Omaha's conduct in relation

to Thorpe was not "extreme or outrageous" or "utterly

intolerable in a civilized society."

Affirmed.

3Although the issue is one which a jury is well suited
to decide, the judge is still expected to apply the
traditional test--could a reasonable jury find the conduct to
violate the tort standard--in deciding whether to submit the
issue to the jury. See Boyle v. Wenk, 378 Mass. 592, 598 &

n. 11, 392 N.E.2d 1053, 1057 & n. 11 (1979) (citing
Restatement (Second) of Torts 46, comment h (1965)); Agis,

372 Mass. at 145-46, 355 N.E.2d at 319 (same). See also

Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1021 (1st Cir.

1988).

-10-