Botsford, J.
The plaintiff Christine Chase has filed a five-count complaint against the following defendants: the First Parish Church of Lexington (the Lexington church), Michelle Favreault, Betsy Filz, and Denise Bianco. Defendants now move for partial summary judgment on the counts alleging (1) invasion of privacy in violation of G.L.c. 214, §1B; (2) violation of the Massachusetts Civil Rights Act (MCRA), G.L.c. 12, §111; and (3) intentional infliction of emotional distress. For the reasons set forth below, defendants’ motion is allowed in part and denied in part

BACKGROUND

The following facts are undisputed, or, if there is a dispute, the facts are stated in a light most favorable to Chase as the non-moving party. At the time of the events giving rise to this action, Christine Chase was a fifty-seven-year-old member of the Lexington church. The defendant Michelle Favreault was the director of religious education for the Lexington church, and the defendants Betsy Filz and Denise Bianco were volunteer Sunday school teachers.
Chase was born severely deaf and as a child, she had been misdiagnosed as “retarded” and autistic. In approximately February of 1995, Filz asked Chase if she would demonstrate sign language to a Sunday school class of children. Chase agreed to do this. Time went by and sometime in April, within a week of the class which Chase was going to attend, Filz asked Chase if she would also talk to the class about “what it was like when [she was] retarded.” Chase responded, “That’s horrible. Of course not.” Filz then asked Chase to tell the children about a time when she had experienced prejudice, and Chase said she would not do that. Several days later, Chase told Michelle Favreault that she was shocked by Filz’s request and therefore she would no longer be willing to participate in the Sunday school class.[2] For that reason, she gave Filz the sign language tape a few days before the scheduled class.
On the day of the Sunday school class that Chase had originally agreed to attend, Filz approached Chase in the church sanctuary and motioned to her. Subsequently, because she was embarrassed about the scene that she felt that Filz had made in the sanctuary, Chase accompanied Filz to the Sunday school class. On the way to the class, she informed Filz that she would talk about sign language, but did not want to talk about anything personal.
Filz played the sign language tape provided by Chase to the Sunday school class, which consisted of a group of approximately twelve ten- to twelve-year -old children. After stopping the tape, Filz asked Chase to talk about her childhood. Chase told the class a number of things about her childhood that were pleasant. According to Chase, Filz apparently asked her a specific question about being in a play as a child. In response, Chase then described a time when, as a child in a school play, another student, standing in the wings, mouthed for Chase the words of the other actors so Chase would know when to say her lines. Chase felt intimidated and pressured by Filz’ questions, and only relayed that story because she felt under pressure being around children: “I mean, I didn’t want to make things worse for them. I didn’t want to make it obvious I was pressured.” (Chase dep. pp. 127-28.) Then Denise Bianco appeared from the back of the class and asked Chase to talk about a time when she experienced prejudice. Chase responded that she never experienced prejudice, and Bianco said, “Oh, but you must have.”[3] After becoming very distressed, Chase described an incident in which a minister from The First Parish Church in Concord mocked her use of a hearing device by placing his hand over his ears and pretending he was a clown wearing headphones. Chase felt “put on the spot . . . singled out and labeled” by Bianco’s questions. Chase concedes that Favreault, Filz and Bianco never threatened her, but asserts that Bianco was “very, very pushy” and thus threatened her emotionally.
As a result of this incident in the Sunday school class and her reaction to it, Chase was hospitalized at McLean Hospital for depression and suicidal ideation.
On March 3, 1995, two months before the Sunday school class at the Lexington church which gives rise to this action, Chase filed a complaint in the Middlesex Superior Court against Corinne Atkins, Reverend Gary Smith of the First Parish Church in Concord, and others, alleging, in part, wrongful disclosure of private information regarding Chase (the “Atkins litigation”). Specifically, Chase sued Corinne Atkins because Atkins allegedly published in her newspaper column in 1991 private information about Chase’s congenital deafness and childhood misdiagnosis that Chase had shared in a spiritual biography workshop at the Concord church under mutual promises of confidentiality. Although the newspaper article did not disclose Chase’s identity, Chase alleged in her complaint that Corinne Atkins told many people that the paragraphs in question were about Chase. In her deposition in this case, Chase admits that she has spoken about the newspaper column with other people.[4] The allegations in the Atkins complaint against Reverend Gary Smith are quite vague, but it may be that part of Chase’s claim concerned the incident when he allegedly put *262 his hands over her ears and mocked her. The Atkins litigation was voluntarily dismissed.
DISCUSSION
Summary judgment shall be granted when there are no genuine issues of fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that, as a result, the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17. The nonmoving party cannot defeat a motion for summary judgment by resting on the pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I. Invasion of Privacy
Chase asserts that by publicly questioning her about private and personal experiences in front of a Sunday school class at her church, the defendants invaded her privacy in violation of G.L.c. 214, §1B (§1B). Section IB provides that “a person shall have a right against unreasonable, substantial or serious interference with his privacy.” Thus, absent a legitimate, countervailing interest, this statute forbids “the required disclosure of facts about am individual that are of a highly personal or intimate nature ...” Bratt v. International Business Machines Corp., 392 Mass. 508, 518 (1984).
Chase’s claim under the privacy statute must fail. Chase bases her invasion of privacy claims on the fact that due to conduct of the defendants that she personally experienced as intimidating and pressuring her, she revealed two personal incidents to a Sunday school class. Specifically, she told the class that when she performed as a child in a school play, another student would mouth for her the words of other actors from the wings so that she would know when to say her lines. Additionally, she described an incident in which she was mocked by a minister of a church for wearing a device to enhance her hearing. The issue of whether Chase’s relation of these two incidents from her past to the class was a “required disclosure” (see id.) of private facts is discussed below. But even if it was, in the context of this case, the incidents described by Chase do not constitute information that is protected by §1B.
“For purposes of the Massachusetts Privacy Act, ‘private’ facts are not necessarily simply those that are ‘not public,’ that is, not generally or widely known. Rather, §1B proscribes the ‘required disclosure of facts about an individual that are of a highly personal or intimate nature.’ ” French v. United Parcel Service, Inc., 2 F.Sup.2d 128, 131 (D.Mass. 1998). The fact that Chase was born severely deaf was a fact in the public domain. Chase does not suggest otherwise, and a reasonable inference from the factual record presented here is that Favreault and Filz asked Chase for help with their class on prejudice against persons with disabilities because they were well aware of her congenital hearing problem.[5] When information about a plaintiff, although seemingly private, has already been made public, a defendant is not liable merely for giving further publicity to such information. Jones v. Taibbi, 400 Mass. 786, 801 (1987).[6] Against this background, the fact that another child assisted her in dealing with the limitations imposed by her deafness during a school play is not a distinct or separate fact about Chase that is highly personal or intimate. Furthermore, presumably the play itself was seen by many individuals, and the assistance provided by a fellow student itself also would have been witnessed by others — at the very least, the cast and crew of the school play. Chase suggests that this childhood incident had taken place a long time in the past, and by 1995, the passage of time rendered the facts about it private because no one who had been at the play presumably would be interested in talking about the event any longer. That may be so, but it does not change the event itself into something that was highly personal and intimate.
Similarly, the incident in which Chase claims that the minister mocked her use of the hearing device is not protected under G.L.c. 214, §1B. Again, this event took place in public: Chase stated she was in line after a church service shaking the hands of the ministers or minister, and the reasonable inference to draw is that there were other participants in the service who were engaged in the same hand-shaking activity. Moreover, while a precise date is not given for this event, it appears that it took place in 1991. (See Chase Tr. pp. 74-81, 122.) That was not so long before the 1995 Sunday school class that it would have necessarily faded from view.[7] In the circumstances, Chase cannot succeed in showing that the details of this experience with Reverend Gary Smith constituted private information subject to protection under §1B.
There is another difficulty with Chase’s claims. On the record presented here, there is no objective evidence that Chase was required to disclose the two incidents she described to the Sunday school class, such that, if the information were private, its disclosure would constitute an “unreasonable, substantial or serious interference” with Chase’s privacy. See Bratt v. International Business Machines Corp., supra, 392 Mass. at 518. In contrast to the situation in Cort v. Bristol-Myers Co., 385 Mass. 300 (1982), and the cases discussed there, see id., at 306-08 and n. 9; 311-13 and n.1 (Abrams, J., concurring), Chase was not employed by the Lexington church and obligated to *263 answer certain personal questions or face dismissal from her job. Nor is there any evidence that Chase was required, as a condition of remaining an active member of the Lexington church, to participate personally in the Sunday school class or to answer questions about her childhood and about any personal experiences with prejudice. Rather, the evidence indicates that Chase decided on her own to accompany Filz to the Sunday school class because she was so embarrassed by Filz’s manner of approaching her in church, and thereafter she spoke to the students about her childhood and an experience with prejudice because she subjectively felt pressured to do so.
A disclosure of private facts cannot be actionable under §1B if the disclosure occurs voluntarily. See Cort v. Bristol-Myers Co., supra, 385 Mass. at 311 and n.1 (Abrams, J., concurring). The determination whether §1B has been violated — that is, whether an intrusion into an individual's privacy is sufficiently unreasonable, substantial or serious to come within the scope of the statute — is essentially objective. See, e.g., Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, 409 Mass. 514, 517-22 (1991). In my view, it follows from this that the test of whether a disclosure of private facts is required or voluntary also must primarily be an objective one. Chase’s personal feelings of pressure and intimidation do not translate into an objective obligation to speak to the Sunday school class. She chose to go with Filz to the class rather than ignore Filz’ “gymnastic” gesturing, and ultimately she chose to speak to the students in the class about her childhood and about her experience with prejudice. In the circumstances, Chase has not shown a forced invasion of her privacy.
II. Violation of the Massachusetts Civil Rights Act
Chase further alleges that defendants have violated the MCRA, G.L. 12, § 111.[8] She bases her MCRA claims on the alleged violation of her privacy rights under G.L.c. 214, §1B. To establish a claim under the MCRA, the plaintiff “must prove that (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion.” French v. United Parcel Service, Inc., supra, 2 F.Sup.2d at 133, quoting Bally v. Northeastern Univ., 403 Mass. 713 (1989). Having found that defendants did not interfere with Chase’s right to privacy, I find that Chase cannot establish a MCRA violation because, based on the evidence presented, she will be unable to show that her exercise or enjoyment of rights secured by the Constitution or laws of either the United States or the Commonwealth have been interfered with. See G.L.c. 12, §1II. Thus, her MCRA claim fails as a matter of law.
III. Intentional or Reckless Infliction of Emotional Distress
To establish a claim for intentional infliction of emotional distress,[9] Chase must show that (1) the defendants intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of their conduct; (2) that the defendants’ conduct was extreme and outrageous; (3) that the defendants’ conduct caused Chase’s distress; and (4) the emotional distress suffered was severe and of such a nature that no reasonable person could be expected to endure it. Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997), citing Payton v. Abbott Labs, 386 Mass. 540, 555 (1982) (further citations omitted). The defendants contend that, as a matter of law, Chase fails to establish the second and fourth elements. I disagree.
The defendants assert that their conduct was not extreme and outrageous, that is, it was not “so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.” Mello v. Stop & Shop Cos., Inc., 402 Mass. 555, 562-63 (1988); Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987). Based on the evidence before me, I conclude that the defendants may have “engaged in a pattern of conduct which a jury could find was extreme and outrageous, exceeding mere insult or minor annoyance.” See Boyle v. Wenk, 378 Mass. 592, 595 (1979).
It is important to note that conduct otherwise reasonable may become tortious when it is directed at an individual known to be particularly susceptible to the infliction of emotional distress. See id. at 596. The summary judgment record, viewed in Chase’s favor, indicates that at least the defendants Filz and Favreault knew that Chase distinctly did not wish to speak about her childhood or her personal life to the children at the Sunday school class, but Filz nonetheless pressed her repeatedly to do so, and Favreault took no steps to prevent this from happening. At the class itself, one may infer that Chase’s distress was quite obvious, and yet Filz and Bianco continued to put questions to Chase about her childhood and prejudice. It is the responsibility of a jury to determine if Chase is a person particularly susceptible to distress, and, if so, whether in light of that fact, defendants’ conduct was extreme and outrageous. See id. “Where ‘reasonable men may differ’ as to whether a plaintiff has alleged facts and circumstances which reasonably could lead the trier of fact to conclude that the defendant’s conduct was extreme and outrageous, the question should go to a jury.” Foley v. Polaroid Corp., supra, 400 Mass. at 103 (Liacos J. concurring in part and dissenting in part), quoting Restatement (Second) of Torts §46, comment h (1965).
Likewise without substantial merit is the defendants’ contention that Chase has not presented *264 evidence to establish that the emotional distress she suffered was severe and of such a nature that no reasonable person could be expected to endure it. Chase alleges that as a result of the defendants’ conduct, she required hospitalization at McLean Hospital. Again, a trier of fact could reasonably conclude that defendants’ conduct had a severe and traumatic effect on Chase’s emotional tranquility and her health. See Brown v. Nutter, McClennen & Fish, 45 Mass.App.Ct. 212, 219 (1998), citing Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976). Because “reasonable men may differ” on this issue, it is best resolved by a jury. See Agis, supra.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ motion for summary judgment as to the plaintiffs claims for invasion of privacy and violation of the Massachusetts Civil Rights Act be ALLOWED. The motion is otherwise DENIED.

Chase asserts that this refusal came shortly after her second telephone conversation with Filz. According to Chase, Filz was unable or unwilling to understand or accept her refusal to participate.

Neither Favreault nor Filz had informed Bianco before the class that Chase did not want to answer personal questions. Chase did not know Bianco, nor was she aware that Bianco would be present at the Sunday school class.

Q: “[D]id you ever speak to anyone about the article?"
A: “Probably. But what difference — how is that relevant?"
Q: “I just wanted to know who you've discussed it with since the article was written.’’
A: “I probably discussed it with people I knew.”
Q: “Did you talk openly with people afterwards who [sic] knew about the fact that you were misdiagnosed as autistic?"
A: “I probably did. I figured to hell with it. If [Atkins is] going to distribute this around to a hundred people, what have I got — [I] mean I’m done for. I had to give up on my privacy. And even if only one person is told, people gossip. People talk."
Q: “Okay.”
A: “There’s no way I can retain my privacy once it’s been violated."

Before the Sunday school class had occurred, Chase had discussed this fact and her misdiagnosis of autism with others, see note 4 above, and had commenced a lawsuit, the Atkins litigation, complaining in part about the publication of this information.

The record here indicates that one of the aspects about Filz’ conduct that seemed so outrageous and ultimately hurtful to Chase was Filz’ request that Chase talk about “when she was ’retarded.’ " However insensitive and obtuse the comment was, there is nothing presented here to suggest that either Filz or Bianco asked Chase anything about being “retarded” or being misdiagnosed as autistic in front of the Sunday school class. Certainly the two incidents that Chase considers herself to have been forced to relate had nothing to do with this aspect of her childhood.

To the extent that the minister’s conduct involving the hearing device was a subject of the Atkins litigation, obviously Chase herself had made the information public. Cf. Brown v. Hearst Corporation, 862 F.Sup. 622, 631 (D.Mass. 1994) (no invasion of privacy where the facts which emerged from the broadcast had already surfaced in the plaintiffs divorce trial, the police investigation, and at least three newspaper articles). See also Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 521 (1991) (a plaintiff, through his conduct, may diminish his expectation of privacy).

Section 111 provides as follows: “Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or rights of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate and equitable relief as provided for in said section, including the award of compensatory money damages. Any aggrieved person or persons who prevail in an action authorized by this section shall be entitled to an award of the costs of the litigation and reasonable attorneys fees in an amount to be fixed by the court."

The elements for reckless infliction of emotional distress are the same as the elements for intentional infliction of emotional distress. Bowman v. Heller, 420 Mass. 517, 519 n.2 (1995).