Moriarty, Cornelius J., J.
Before the Court is the defendants’ Motion to Dismiss. The pro se plaintiff, Gerald O’Malley has filed a lawsuit against his wife, Elizabeth’s, nieces and nephews seeking damages for intentional infliction of emotional distress and loss of consortium. The facts as alleged in the complaint which I take as true for the purposes of this motion are as follows.
With increasing intensity, over a period of several years, the defendants waged a campaign to destroy the couple’s marriage(s), for the purpose of protecting their Aunt, as well as their own interests under her will, by harassing Gerald and Elizabeth, making them uncomfortable and unhappy, implying that Gerald had gotten married to defraud Elizabeth of her assets. Gerald alleges that he experienced fear, cardiac symptoms, and loss of hope for the future.
The relevant background reveals that Gerald and Elizabeth were first married on Februaiy 13, 2000. The defendants, Martha and Gary to the marriage negatively, gave the couple a cold reception, and told *474 them that the wedding had been a mistake and that they were not well suited to one another.
The defendants isolated the couple by boycotting their home; gossiped that, due to Gerald’s age, he was likely after Elizabeth for her money, which gossip kept old friends away; refused to address Gerald by name; reminded Elizabeth how disappointing it must be that her marriage had not been more celebrated; invited Elizabeth to attend holiday festivities without Gerald; applied urgent pressure on Elizabeth to undo her mistake by having the marriage annulled. The couple’s first marriage was in fact annulled on March 5, 2000.
On one occasion, when Gerald asked her to turn down the volume on the television, the defendant, Rosalind screamed that she "hated Gerald, and wanted to smash his face, and knock out his teeth if he had any.”
Although the first marriage was annulled Gerald and Elizabeth remarried in 2004. Thereafter it is alleged that Martha and Rosalind expressed disapproval of Gerald on their frequent phone calls with Elizabeth and directed some form of unpleasantness toward the couple almost daily; sowed the seeds of discontent with Elizabeth; with their power over her, overcame Elizabeth’s resistance to signing a divorce petition on October 11, 2007; published an obituary for Elizabeth’s sister in 12/07 that left out the fact that the deceased was survived by Elizabeth and her husband; and lobbied for Elizabeth to be placed on palliative care and allowed to die following her second stroke in October 2008. On the day Elizabeth signed the divorce petition, Ronald asked Gerald to leave, threatened to drag him out, spent two nights on the couple’s couch, and, before leaving, argued with Elizabeth about the value of a divorce. (Elizabeth did not pursue the divorce any further, however, and the couple remains married to this day.) Rosalind later talked Elizabeth into placing her name jointly on Elizabeth’s checking account, then withdrew the majority of the account’s funds.
Gerald alleges that he suffered extreme distress during this time period including fear of interference, humiliation with thirteen medical visits for palpitations, chest pain, and fear of heart attacks, and, after Elizabeth’s second stroke (which Gerald attributes to the defendants’ actions), a loss of any hope of normal enjoyment of society and companionship with Elizabeth.
The defendants seek dismissal of the complaint on several grounds including (and the only issue I need reach) that the allegations fail to state a cause of action for intentional infliction of emotional distress.
To prevail on a claim for intentional or reckless infliction of emotional distress, the plaintiff must show: “(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct . . . ; (2) that the conduct was ‘extreme and outrageous,’ was ‘beyond all possible bounds of decency’ and was ‘utterly intolerable in a civilized community’ . . . ; (3) that the actions of the defendant were the cause of the plaintiffs distress . . . ; and (4) that the emotional distress sustained by the plaintiff was ‘severe’ and of a nature ‘that no reasonable man could be expected to endure it’. . .” (Citations omitted.) Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976).
The initial question is whether the conduct was “extreme and outrageous,” “beyond all possible bounds of decency,” and “utterly intolerable in a civilized community.” Whether the alleged tortious conduct meets this standard may be determined as a matter of law. Sena v. Commonwealth, 417 Mass. 250, 264 (1994).
“Outrageous” means more than “mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.” Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987), quoting Restatement (Second) of Torts §46, cmt. d (1965). “It means, for example, a high order of reckless ruthlessness or deliberate malevolence that ... is simply intolerable.” Conway v. Smerling, 37 Mass.App.Ct. 1, 8 (1994).
Conduct that, when viewed in isolation, would not be considered “outrageous” for purposes of the Agis test, may rise to the level of outrageous conduct if the actions are repeated or are part of a larger pattern of offensive conduct. E.g., Boyle v. Wenk, 378 Mass. 592, 595-96 (1979) (continued use of harassing investigatory tactics could be outrageous).
Moreover, “(c)onduct otherwise reasonable maybe-come tortious when directed at an individual known to be particularly susceptible to infliction of emotional distress.” E.g., id. at 596 (fact that defendant knew that plaintiff had just returned home from hospital should have put defendant on notice of plaintiffs special vulnerability), citing Restatement (Second) of Torts §46, cmt. f; illustrations 9-11 (1965); Bailey v. Shriberg, 31 Mass.App.Ct. 277, 279 (1991) (suggesting that age and frailly of plaintiffs may have made them particularly susceptible to noise made by neighbor); Tserkonis v. Notis, 2003 WL 22700548 at * 3 (Mass.Super. 2003) (identifying ages of thirteen-year-old and seven-year-old who were allegedly assaulted by defendant as “a factor to consider” in assessing their claim for intentional infliction of emotional distress).
Based on the cases cited, the conduct Gerald alleges can, at most, be considered to consist of insults, indignities, bad manners, rough language, threats, and inconsiderate and unkind acts. Taken individually, none of the alleged incidents rises to the level of “extreme and outrageous.” Even taking into account that Gerald was in his (late) sixties and seventies when the conduct occurred and considering the incidents as a whole, the conduct is not, in my view, “beyond all possible bounds of decency” and “utterly intolerable in a civilized community.”
*475 To the extent that Gerald claims a loss of consortium, he does so as a result of Elizabeth’s direct injury. In other words, Gerald alleges that Elizabeth suffered two strokes as a consequence of the defendants’ intentional infliction of emotional distress and that, as a result, he no longer has any reasonable expectation of normal society and companionship with her.
In these circumstances, Gerald cannot recover for loss of consortium unless it is first shown that the defendants’ conduct caused Elizabeth’s strokes and resulting brain damage. See Agis v. Howard Johnson Co., 371 Mass. 140, 146-47 (1976). “Although [the Supreme Judicial Court has] determined that a claim for loss of consortium is independent of the spouse’s cause of action ... [it has] not repudiated the implicit prerequisite that the injured spouse have a viable claim” (citation omitted). Sena, 417 Mass, at 264. As discussed above, in the present case, neither Gerald nor Elizabeth has a viable claim for intentional infliction of emotional distress. Thus, Gerald’s claim for loss of consortium must also fail.
Accordingly the defendants’ Motion to Dismiss is ALLOWED.