IRENEE GEORGE, JR., *vs.* JORDAN MARSH COMPANY
& others.

Middlesex.   November 5, 1970. — April 12, 1971.

Present: TAURO, C.J., SPALDING, REARDON, & QUIRICO, JJ.

*Emotional Distress. Actionable Tort. Words,* "Extreme and outrageous."

The rule laid down in *Spade* v. *Lynn & Boston R.R.* 168 Mass. 285, does
not bar recovery for emotional distress resulting from acts intended to
produce such results, or bar recovery for physical injuries resulting
from emotional distress thus produced. [249]

No litigant is automatically denied relief solely because he presents a
question on which there is no Massachusetts judicial precedent. [249]

Summary of statements illustrating the developments in the law of torts
respecting liability for causing emotional distress. [252–255]

One who, without a privilege to do so, by extreme and outrageous conduct
intentionally causes severe emotional distress to another, with bodily
harm resulting from such distress, is subject to liability for such emo-
tional distress and bodily harm even though he has committed no
previously recognized common law tort. [255]

A cause of action in tort against a company and its employee was stated
by a declaration alleging that the company sold goods on credit to the
plaintiff's emancipated son, that thereafter the defendants asserted that
the plaintiff had guaranteed in writing to pay her son's debt although
they knew that she had not given such a guaranty, that the defendants,
with the intent to cause the plaintiff emotional distress and in an
attempt to intimidate her into paying her son's debt, badgered and
harrassed her by "dunning tactics" specifically described, that such
acts caused the plaintiff "great mental anguish and emotional distress
as intended" by the defendants, that as a result thereof the plaintiff's
health deteriorated and she suffered a heart attack, that, notwith-
standing her attorney's request that the "harrassing tactics be dis-
continued," the defendants persisted in their "above mentioned har-
rassing tactics," that as a consequence the plaintiff suffered greater
emotional distress which resulted in a second heart attack, and that
all of such acts prevented her from enjoying a gainful employment
and caused her to incur expenses for medicine, medical attendance
and nursing. [255–256]

George *v.* Jordan Marsh Company.

TORT. Writ in the Superior Court dated November 17, 1969.

The action was heard by *Spring, J.,* on demurrer.

*Joseph Stashio* for the plaintiff.

*Joseph P. Warner* for the defendants.

QUIRICO, J. This is an action of tort to recover damages for mental anguish and emotional distress[1] resulting in two heart attacks, all allegedly caused by the defendants in attempting to collect from the plaintiff on a debt incurred by her emancipated son. The counts are identical except for the fact that the first count names Jordan Marsh Company (Jordan Marsh), and each of the second and third counts names an employee of the company, as the defendants. The case is before us on the plaintiff's appeal under G. L. c. 231, § 96, from an order of a judge of the Superior Court sustaining the defendants' demurrer to each of the three counts.

We summarize the allegations contained in the three counts of the declaration. Each count alleged that Jordan Marsh sold goods on credit to the plaintiff's emancipated son, and that thereafter each defendant (Jordan Marsh acting through the individual defendants as its agents, servants and employees) did the following: They alleged that the plaintiff had guaranteed in writing to pay her son's debt, and that they knew that she had not given such a guaranty. With the intent to cause the plaintiff emotional distress and in an attempt to intimidate the plaintiff into paying the debt which she did not owe or guarantee, they badgered and harassed her (a) by telephone calls during late evening hours, (b) by repeatedly mailing bills to her marked "account referred to law and collection department," (c) by letters to her stating that her credit was revoked, that the debt was charged to her personal account,

---

[1] Although the declaration alleges "mental anguish and emotional distress," we use the limited phrase "emotional distress" in the rest of this opinion. For the purpose of this opinion these words are intended to apply to what has been variously called or referred to as mental anguish, mental suffering, mental disturbance, mental humiliation, nervous shock, emotional disturbance, distress of mind, fright, terror, alarm and anxiety.

and that late charges were being added to the debt, and (d) by "numerous other dunning tactics." These acts allegedly caused the plaintiff "great mental anguish and emotional distress as intended by the defendant[s]," and as a result her health deteriorated and she suffered a heart attack. The plaintiff's attorney requested that the "harassing tactics be discontinued" because the plaintiff did not owe the debt and because the tactics were adversely affecting her health. The defendants persisted in their "above mentioned harassing tactics," and as a result thereof the plaintiff suffered greater emotional distress resulting in a second heart attack. All of this has allegedly prevented the plaintiff from engaging in gainful employment and she has incurred expenses for medicine, medical attendance and nursing.

For the purpose of obtaining a decision on their demurrer, the defendants admit all of the facts well pleaded in the declaration and the necessary inferences from the facts thus admitted. *Monach* v. *Koslowski*, 322 Mass. 466, 468. *Grammenos* v. *Zolotas*, 356 Mass. 594, 597. The question to be decided by us is whether the facts and inferences thus admitted[2] constitute a cause of action in favor of the plaintiff against the defendants. Since the facts and inferences admitted by each defendant are the same it is unnecessary for us to consider the case against each defendant separately.

The arguments on both sides of this case seem to revolve on the following language in the 1897 decision in *Spade* v. *Lynn & Boston R.R.* 168 Mass. 285, 290: "We remain satisfied with the rule that there can be no recovery for fright, terror, alarm, anxiety, or distress of mind, if these are unaccompanied by some physical injury; and if this rule is to stand, we think it should also be held that there can be no recovery for such physical injuries as may be caused solely by such mental disturbance, where there is

---

[2] For the purpose of this decision we do not assume that the defendants, by their demurrers, admitted the allegation that they were guilty of "numerous other dunning tactics" other than those specifically described.

no injury to the person from without." The *Spade* decision was the progenitor of a long judicial lineage in this Commonwealth. On the same day the decision was issued, it was cited as authority for the decision in *White* v. *Sander,* 168 Mass. 296, and it was most recently cited with approval in *O'Dea* v. *Mitchell,* 350 Mass. 163, 165. The decision has been discussed or cited, but distinguished, in a number of decisions, the most recent being *Skelton* v. *Mass. Elec. Co.* 358 Mass. 807. It has been cited, discussed, questioned and criticized in numerous articles in law journals and other legal periodicals.

The present case is typically illustrative of the continuing question of the application, scope or limitations of the rule of the *Spade* case. The defendants rely on the holding in the *Spade* case and contend that it is controlling on the facts before us. The plaintiff seeks to distinguish it and to avoid its application in this case. In this respect the present case is similar to *Sullivan* v. *H. P. Hood & Sons, Inc.* 341 Mass. 216, where the court said at page 222: "We have not been asked to overrule the *Spade* case, and we are not disposed to do so. What we have been asked to do is to draw a distinction on the ground that . . . [the defendant's acts] constituted a 'battery.'" The court then concluded that there was no battery and applied the rule of the *Spade* case.

The rule quoted above from the *Spade* decision denying recovery for emotional distress where there is no injury to the person from without is but a part of the decision. It is clear from the decision in its entirety that the rule was originally intended to apply only to actions in tort for negligence. The court concluded its discussion of the rule with the following statement at p. 290: "It is hardly necessary to add that this decision does not reach those classes of actions where an intention to cause mental distress or to hurt the feelings is shown, or is reasonably to be inferred, as, for example, in cases of seduction, slander, malicious prosecution, or arrest, and some others. Nor do we include cases of acts done with gross carelessness or recklessness,

showing utter indifference to such consequences, when they must have been in the actor's mind."[3]

In *Smith* v. *Postal Tel. Cable Co. of Mass.* 174 Mass. 576, decided approximately two and one-half years after the *Spade* case, the plaintiff, apparently mindful of the language quoted above from the *Spade* case, sought recovery for mental anguish and resulting sickness allegedly caused by the defendant's "gross carelessness and recklessness and with utter indifference to the consequences that it knew would follow from its . . . acts." In upholding the sustaining of a demurrer to the declaration, Chief Justice Holmes said, at p. 578: "If the rule [of the *Spade* case] is to be adhered to that there can be no recovery for sickness due to the purely internal operation of fright caused by a negligent act, it cannot be avoided by calling the negligence gross and alleging that the defendant ought to have known that the result complained of would follow his act. . . . [T]o allow it to be avoided by such an allegation would be to do away with it. The decisions leave open the question whether if the harm to the plaintiff was actually foreseen and intended that would make a difference. *It is possible that in some cases motive and actual intent would be more considered in this Commonwealth than they would be in England. That question may be left until it arises*" (emphasis supplied). For indications that notwithstanding the *Spade* rule a defendant may be liable for emotional distress intentionally caused by him even though there be "no injury to the person from without," see *Sullivan* v. *H. P. Hood & Sons, Inc.* 341 Mass. 216, 222–223, and *Mills* v. *Keeler*, 351 Mass. 502, 503.

---

[3] The *Spade* decision also includes the following significant language indicating that the rule stated therein applies only to negligent acts. At page 289 the court said that it was "determining the rules of law by which the right to recover compensation for *unintended injury* from others is to be governed." On the same page it said: "One may be held bound to anticipate and guard against the probable consequences to ordinary people, but to carry the rule of damages further imposes an undue measure of responsibility upon those who are guilty only of *unintentional negligence*." At page 290, the court, after stating the rule of the case, said: "The logical vindication of this rule is, that it is unreasonable to hold persons who are *merely negligent* bound to anticipate and guard against fright and the consequences of fright . . ." (emphasis supplied).

That question which Chief Justice Holmes said in 1899 "the decisions leave open" and "may be left until it arises," is still open and has now arisen for the first time for decision by this court.[4] We start our discussion of this question by holding that the rule laid down in the *Spade* case does not apply to bar recovery for emotional distress resulting from acts intended to produce such results, or to bar recovery for physical injuries resulting from emotional distress thus produced. The defendants' contention to the contrary is rejected. Whatever may be said for or against the rule of the *Spade* case, it has no application to this case.

The defendants argue that "there is no authority under existing Massachusetts law for the proposition that the intentional infliction of mental or emotional distress provides a separate and distinct basis of tort liability." That is true only because the precise question has never been presented to this court for decision. That argument is therefore no more valid than would be an argument by the plaintiff that there is no record of any Massachusetts law denying recovery on such facts. No litigant is automatically denied relief solely because he presents a question on which there is no Massachusetts judicial precedent. It would indeed be unfortunate, and perhaps disastrous, if we were required to conclude that at some unknown point in the dim and distant past the law solidified in a manner and to an extent which makes it impossible now to answer a question which had not arisen and been answered prior to that point. The courts must, and do, have the continuing power and competence to answer novel questions of law arising under ever changing conditions of the society which the law is intended to serve.

---

[4] The cases of *Stiles* v. *Municipal Council of Lowell*, 233 Mass. 174, and *Frewen* v. *Page*, 238 Mass. 499, cited by the parties related in part to recovery of damages for mental anguish, but they did not answer this open question. When the question was presented in a trial in a Federal District Court in 1959, the court said: "Basic to a consideration of both contentions is an analysis of the nature of an action for intentionally inflicting emotional distress. There appear to be no Massachusetts cases involving this tort. But we may assume that Massachusetts would recognize that it is a tort for a person, without a privilege to do so, intentionally to cause emotional distress to another." *Cohen* v. *Lion Prod. Co.* 177 F. Supp. 486, 489 (D. Mass.).

The defendants also argue that "this Court has heretofore allowed recovery for these items of damages [mental or emotional distress] only in the cases where the defendant has committed an independent and separate tort recognized at common law." This, if true, is basically the same argument, or a subsidiary of the same argument, discussed and disposed of in the preceding paragraph. The right to recover for these items of damages should not be denied just because they do not fit in any of the existing niches in the ancient walls surrounding the law of torts. If the current needs of society require and justify so doing, the walls may be extended and additional niches built to accomplish justice.

These items of damages have sometimes been described as "parasitic" because of the very argument made by the defendants. 38 Am. Jur. 2d, Fright, Shock, and Mental Disturbance, § 29. Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv. L. Rev. 1033, 1048, 1059. The fact that they are "parasitic" in nature when permitted to be recovered in addition to other damages recoverable for torts recognized at common law does not require a conclusion that they cannot, or should not, be proper elements of compensable damages when standing alone or with illness or injuries flowing therefrom.

The decision in the *Spade* case recognized the difficulty in trying to justify the denial of recovery where there was "no injury to the person from without." It finally said, at p. 288, that "it is hard on principle to say why there should not also be a recovery for the mere mental suffering when not accompanied by any perceptible physical effects. It would seem therefore that the real reason for refusing damages sustained from mere fright . . . probably rests on the ground that in practice it is impossible satisfactorily to administer any other rule." It said further, at p. 290, that to allow such recovery "would open a wide door for unjust claims, which could not successfully be met." These reasons, if sound, would seem to apply equally to all claims for damages for emotional distress, whether "parasitic" to recovery

for a tort recognized at common law, or independent of any such tort. The possibility of "unjust claims" is inherent in either type of case. Fact finding tribunals, whether judges, juries or auditors, are considered qualified and competent to decide whether there is any emotional distress resulting from a recognized common law tort, and, if there is, to include compensation therefor in any damages awarded the victim. They would seem to be equally qualified and competent to decide the same issues when the claim is based on intentional acts allegedly causing emotional distress without a recognized common law tort. When some of these same objections were made to recovery for prenatal injuries, we said: "The advancement of medical science should take care of most of these arguments. The element of speculation is not present to any greater extent than in the usual tort claim where medical evidence is offered and the issue of causation must be weighed with great care. . . . The opportunity for fraudulent claims can be faced by the courts as in other types of cases. . . . We are not impressed with the soundness of the arguments against recovery. They should not prevail against logic and justice." *Torigian* v. *Watertown News Co. Inc.* 352 Mass. 446, 448–449.

The combined effect of the decisions in the *Spade* case and in *Smith* v. *Postal Tel. Cable Co. of Mass.*, *supra*, was to declare that in this Commonwealth, when there is "no injury to the person from without," there can be no recovery for emotional distress caused by negligent or grossly negligent conduct of a defendant. However those decisions, and the decisions in *Sullivan* v. *H. P. Hood & Sons, Inc.* and *Mills* v. *Keeler*, both *supra*, carefully and pointedly intimated that there might be a right to recover for emotional distress intentionally caused, even though no other recognized tort was committed.

Despite the absence of any controlling judicial precedent on this subject in this Commonwealth, there have been many persuasive decisions thereon in other jurisdictions. These decisions, particularly those within the last forty

years,[5] show a considerable change by way of a departure from the former position limiting recovery for emotional distress to cases where it resulted from the commission of a recognized common law tort. The development in the law on this subject has been reflected in changing statements in succeeding editions of the Restatement of the Law and in scholarly treatises by recognized authorities on the law of torts. The Restatement and the treatises are so fully annotated with references to the decisions accomplishing the change in the law that it is unnecessary for us to repeat the citations.[6] Instead it may be sufficient to give the following summary of the statements illustrating the developments in this field of law.

1. In 1934 the Restatement: Torts, § 46, said: "Except as stated in §§ 21 to 34 [on assault and battery] and § 48 [on special liability of carrier for insults by servants], conduct which is intended or which though not so intended is likely to cause only a mental or emotional disturbance to another does not subject the actor to liability (a) for emotional distress resulting therefrom, or (b) for bodily harm unexpectably resulting from such disturbance."

2. In 1936 Professor Calvert Magruder (later Judge Magruder), writing on "Mental and Emotional Disturbance in the Law of Torts" in 49 Harv. L. Rev. 1033, said at p. 1067: "No longer is it even approximately true that the law does not pretend to redress mental pain and anguish 'when the unlawful act complained of causes that alone.' If a consistent pattern cannot yet be clearly discerned in the

---

[5] "[S]omewhere around 1930 it began to be recognized that the intentional infliction of mental disturbance by extreme and outrageous conduct constituted a cause of action," where no traditional ground of tort liability could be discovered. Prosser, Torts (3d ed.) § 11 (p. 48).

[6] For other extensive collections of such citations, see 38 Am. Jur. 2d, Fright, Shock, and Mental Disturbance, and Annotations, 15 A. L. R. 2d 108, 64 A. L. R. 2d 100, and 29 A. L. R. 3d 1337. For some of the many cases involving emotional distress allegedly caused by the defendants' attempts to collect debts, see *Clark* v. *Associated Retail Credit Men,* 105 F. 2d 62 (Ct. App. D. C.), *Maze* v. *Employees' Loan Soc.* 217 Ala. 44, *Herman Saks & Sons* v. *Ivey,* 26 Ala. App. 240; *Delta Fin. Co.* v. *Ganakas,* 93 Ga. App. 297, *Barnett* v. *Collection Serv. Co.* 214 Iowa, 1303, *LaSalle Extension Univ.* v. *Fogarty,* 126 Neb. 457. *Kirby* v. *Jules Chain Stores Corp.* 210 N. C. 808, and *Duty* v. *General Fin. Co.* 154 Texas, 16.

cases, this but indicates that the law on this subject is in a process of growth."

3. In the 1948 Supplement to the Restatement: Torts, § 46 was changed to provide that "one who, without a privilege to do so, intentionally causes severe emotional distress to another is liable (a) for such emotional distress, and (b) for bodily harm resulting from it."[7]

4. In 1956 Professors Harper and James said that "there is, in modern law, a distinct tendency to allow recovery for . . . [certain disagreeable emotional] disturbances," and that "[w]here severe mental suffering is intentionally caused and it is of such a kind as is likely to and does cause bodily illness . . . the law today generally allows . . . [recovery]." Harper and James, Torts, § 9.1.

5. In 1964 Professor Prosser said: "It is not until comparatively recent years that there has been any general admission that the infliction of mental distress, standing alone, may serve as the basis of an action, apart from any other tort. In this respect, the law is clearly in a process of growth, the ultimate limits of which cannot as yet be determined." Prosser, Torts (3d ed.) § 11.

6. When Restatement 2d: Torts, was published in 1965, § 46 was again revised so that the part applicable to the case before us now reads as follows: "(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." The rest of § 46 relates to severe emotional distress caused to a person other than the one against whom the defendant directed his outrageous, intentional or reckless conduct.

Although the change in the law in this area has been extensive in a relatively short span of time, there has never been any holding or even suggestion that the law should

---

[7] The reporter's comment on this change was: "This is a part of the law of torts in which real developments have occurred in recent years and this development is continuing. The cases which have appeared since 1934 establish that the interest in freedom from severe emotional distress is protected against intentional invasion."

permit recovery by every person whose feelings have been hurt even though the hurt be inflicted intentionally. In his 1936 article, Professor Magruder cautioned against opening up "a wide vista of litigation in the field of bad manners, where relatively minor annoyances had better be dealt with by instruments of social control other than the law." He added: "Of course there is danger of getting into the realm of the trivial in this matter of insulting language. No pressing social need requires that every abusive outburst be converted into a tort . . . ." 49 Harv. L. Rev. 1033, 1035, 1053.

It is now obvious that the cautionary comments and limitations suggested by Professor Magruder in 1936 were followed and incorporated in the law as it developed. The rule most recently stated in 1965 in Restatement 2d: Torts, § 46, bases liability for emotional distress and any bodily harm resulting therefrom on the concurrence of (a) intentional or reckless conduct which is *"extreme and outrageous,"* and (b) resulting *"severe emotional distress"* (emphasis supplied).

The meaning of the words "extreme and outrageous" as used in § 46 is discussed in comment d of the reporter's[8] notes to the section. It says in part that "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Comment f deals with a defendant's knowledge as bearing on the issue whether his conduct is extreme and outrageous. It says in part: "The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know." This

[8] The reporter is Professor William L. Prosser quoted elsewhere in this opinion.

comment has particular significance in the case before us because of the plaintiff's allegation that the defendants continued their alleged "harassing tactics" after being informed that the plaintiff did not owe the bill in question and that the tactics were affecting her health adversely. Comment j, in discussing the meaning of the words "severe emotional distress," says in part that "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it."

Considering the weight of judicial authority as reflected in the most recent statement of the law in Restatement 2d: Torts, § 46, and limiting ourselves to the allegations contained in the declaration before us, we hold that the law of this Commonwealth should be, and is, that one who, without a privilege to do so, by extreme and outrageous conduct intentionally causes severe emotional distress to another, with bodily harm resulting from such distress, is subject to liability for such emotional distress and bodily harm even though he has committed no heretofore recognized common law tort. Because of the allegations in the declaration before us, we are not required to rule, and do not rule, on the legal sufficiency of allegations of negligent, grossly negligent, wanton or reckless conduct causing severe emotional distress resulting in bodily injury, or on the legal sufficiency of allegations of distress without resulting bodily injury. See *Smith* v. *Postal Tel. Cable Co. of Mass.* 174 Mass. 576, 578, and Restatement 2d: Torts, §§ 306, 312, and 313, concerning the negligent causation of emotional distress. As was said in the *Smith* case, "[t]hat question may be left until it arises."

Testing the plaintiff's declaration by the rules stated above, we hold that each count thereof states a cause of action and is therefore legally sufficient.[9] The plaintiff is

---

[9] This conclusion is reached without reliance upon G. L. c. 93, § 49, inserted by St. 1970, c. 883, § 1. This statute prohibits the collection or attempted collection of certain debts in an unfair, deceptive or unreasonable manner, and it provides that the failure to comply with its provisions "shall constitute an unfair or deceptive act or practice under the provisions of chapter ninety-three A." General Laws c. 93A, § 9, inserted by St. 1969, c. 690, and as

entitled to an opportunity to prove the allegations which she has made. The demurrer should have been overruled. The order sustaining the demurrer is therefore reversed as to each count of the declaration.

*So ordered.*

amended by St. 1970, c. 736, §§ 1, 2, provides that "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive act or practice . . . may . . . bring an action in the superior court in equity for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper." Although these statutes were mentioned in oral argument, the briefs contain no reference to them or arguments based on their provisions. The plaintiff's declaration does not state a claim under this statute; and, in any event, this is not a suit in equity.