ELLEN RATNER vs. ELAINE NOBLE.

No. 92-P-162.

Middlesex. March 31, 1993. - August 13, 1993.

Present: ARMSTRONG. BROWN, & PORADA. JJ.

*Unlawful Interference. Practice, Civil*, Instructions to jury. *Emotional Distress. Actionable Tort.*

In an action arising from certain anonymous mailings sent by the defendant to the plaintiff's professional colleagues and peers intended to discredit the plaintiff, her former friend and associate, in which the evidence was insufficient to show proof of damages to the plaintiff's economic interests, the judge erred in submitting to the jury the count in the plaintiff's complaint that alleged tortious interference with advantageous relationships. [138-139]

In an action arising from certain anonymous mailings sent by the defendant to the plaintiff's professional colleagues, peers, and housemates, intended to discredit the plaintiff, her former friend and associate, the judge did not err in his instructions to the jury with regard to the count in the plaintiff's complaint that alleged intentional infliction of emotional distress. [139-140]

CIVIL ACTION commenced in the Superior Court Department on July 1, 1988.

The case was tried before *Robert H. Bohn*, J.

*Michael Avery* for the plaintiff.

*Morris M. Goldings* (*Amy J. Axelrod* with him) for the defendant.

ARMSTRONG, J. Seeking recompense for anonymous mailings intended to discredit her, sent by the defendant, her former friend and associate, the plaintiff framed a complaint that went to the jury on three counts: defamation, intentional infliction of emotional distress, and tortious interference with advantageous relationships. On the first two, the jury found for the defendant. On the tortious interference count, they

found for the plaintiff in the amount of $60,000. The case is before us on cross appeals.

1. The defendant's appeal is based on a fact stipulated by the parties: that the plaintiff suffered no pecuniary loss as a result of the defendant's campaign. There was evidence that the plaintiff's professional reputation was harmed within the gay and lesbian community but that she retained her paid position as president of Pride Institute, a gay and lesbian alcohol and drug treatment center that she and the defendant founded, and her position with its parent, Addiction Recovery Corporation. There is authority for the proposition that noneconomic damages, such as damages for emotional distress, may be recovered on a count for intentional interference with business relationships. See *Mailhiot* v. *Liberty Bank & Trust Co.*, 24 Mass. App. Ct. 525, 528 (1987); Restatement (Second) of Torts § 774A(1)(c) (1977). Nevertheless, it is clear, under decided cases, that the essence of the tort is damage to a business relationship or contemplated contract of economic benefit. *Owen* v. *Williams*, 322 Mass. 356, 360 (1948). *Comey* v. *Hill*, 387 Mass. 11, 19 (1982). *ELM Med. Lab., Inc.* v. *RKO Gen., Inc.*, 403 Mass. 779, 787 (1989). *Ryan, Elliott & Co.* v. *Leggat, McCall & Werner, Inc.*, 8 Mass. App. Ct. 686, 689 (1979). *Chemawa Country Golf, Inc.* v. *Wnuk*, 9 Mass. App. Ct. 506, 509 (1980). Restatement (Second) of Torts §§ 766, 774A. In the words of § 766, comment t, "The cause of action is for pecuniary loss resulting from the interference. Recovery may be had also for consequential harms for which the interference was the legal cause. (See § 774A)." The latter section, as well as Restatement (Second) of Torts § 47 (1965), makes clear that recovery for emotional distress is not allowed unless the elements of the tort are made out: i.e., actual damage to an economic relationship or prospective relationship.

We recognize that language from an early case, *Walker* v. *Cronin*, 107 Mass. 555, 564-565 (1871),[1] might have been

---

[1]"Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against competition; but he has a right to be free from malicious and wan-

made the starting point for recognition of a broader tort, comprehending not only relationships of economic benefit, but those of nonpecuniary professional or social benefit as well. The law has not developed that way, however. In the words of Professor Prosser, "When the attempt has been made to carry liability for interference beyond such commercial dealings, and into such areas as exclusion from social organizations . . . , the courts have been disturbed by a feeling that they were embarking upon uncharted seas, and recovery has been denied . . . ." Prosser & Keeton, Torts § 130, at 1006 (5th ed. 1984). Applying the law of tortious interference as it is reflected in present law, we think that the judge erred in submitting that count to the jury in the absence of proof of damages to the plaintiff's economic interests. The jury's verdict on that count cannot stand.

2. The plaintiff's cross appeal is based on the judge's refusal to instruct the jury, on the count for intentional infliction of emotional distress, that the "extreme and outrageous conduct" that is an element of the tort, see *George* v. *Jordan Marsh Co.*, 359 Mass. 244, 253-255 (1971); *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 145 (1976), may be made out on a showing of "[r]epeated harassment [, which] may compound the outrageousness of incidents which, taken individually, might not be sufficiently extreme to warrant liability for infliction of emotional distress." *Boyle* v. *Wenk*, 378 Mass. 592, 595 (1979). The judge instead instructed the jury that "the defendant's conduct may be considered extreme and outrageous if it may be reasonably viewed as an attempt to intentionally shock and harm a person's peace of mind by invading that person's mental or emotional tranquility. . . . Thus, if you find that the defendant engaged in conduct that in the totality of the circumstances was intended to, or a reasonable person should have known would, harm . . .

ton interference, disturbance or annoyance. . . . In [such] cases, the damage for which the recovery is had is not the loss of the value of actual contracts by reason of their non-fulfilment, but the loss of advantages, either of property or of personal benefit, which, but for such interference, the plaintiff would have been able to attain or enjoy."

Ratner's peace of mind, then you may find that the defendant is liable for intentional infliction of emotional distress." If this instruction may be faulted for diluting the concept of "extreme and outrageous conduct" (cf. *George* v. *Jordan Marsh Co.*, 359 Mass. at 254-255), we agree with the judge that the "totality of the circumstances" concept was adequately adapted to the evidence. The "repeated harassment" language requested by the plaintiff may be particularly suitable to the dunning tactics of a bill collector, as in *George* v. *Jordan Marsh Co.*, *supra*, or the psychological thumbscrews applied by a private detective, as in *Boyle* v. *Wenk*, 378 Mass. at 595. See also *Simon* v. *Solomon*, 385 Mass. 91, 97 (1982) (pattern of indifference by landlord to repeated sewer backups over a long period). Here the defendant was responsible for essentially two actions: (1) the anonymous mailing of a psychological thriller (Misery, by Stephen King) to the plaintiff's housemates with a note warning them that the book described the plaintiff's future treatment of the housemates; and (2) mailing to the plaintiff's professional colleagues and peers an anonymous letter with materials disparaging the plaintiff and suggesting falsely the existence of a boycott of Pride Institute to protest the plaintiff's connection with it. Although the boycott letter was sent in two or more batches, the case was appropriately viewed by the judge as one invoking two discrete, outrageous acts. The "totality of the circumstances" instruction correctly told the jury that they were not required to view them in isolation. While the judge might have employed the "repeated harassment" language from *Boyle* v. *Wenk* (*id.* at 595), appellate courts have traditionally accorded the trial judge considerable discretion framing jury instructions, both in determining the precise phraseology to be used, *Dobos* v. *Driscoll*, 404 Mass. 634, 655, cert. denied sub nom. *Kehoe* v. *Dobos*, 493 U.S. 850 (1989), and in determining the appropriate degree of elaboration needed, *Julian* v. *Randazzo*, 380 Mass. 391, 397 (1980). There was no error in the instructions on this count.

The judgment for the plaintiff on the tortious interference count of the complaint is reversed. Judgment shall enter for the defendant on all counts.

*So ordered.*