Botsford, J.
The plaintiffs, Marino Valdez and his wife Lisa Linnea Valdez, bring this tort action against the defendants to recover damages related to allegedly defamatoiy comments made about Marino Valdez during a radio broadcast. Defendant Champion Broadcasting System, Inc., now moves for summary judgment on Count I through Count V of the plaintiffs’ complaint. After hearing, and for the reasons discussed below, the defendant’s motion is DENIED as to Counts I and V and ALLOWED as to Counts II, III, and IV. *

BACKGROUND

Viewed in the light most favorable to the plaintiffs, the summary judgment record reveals the following. On March 4, 1994, Isabel Domeniconi (Domeniconi) and Fernando Gil (Gil) were the hosts of a Spanish-language radio program entitled “Farandulay Algo Mas.” The show was broadcast on WUNR-AM (WUNR), which is owned by Champion Broadcasting System, Inc. (Champion). Domeniconi and Gil both purchase air time from Champion and WUNR to broadcast their programs.
During the program, Domeniconi and Gil discussed subjects related to community and entertainment news. The hosts also invited listeners to call the station with their comments, which were broadcast on the air. In the course of the program, Domeniconi and Gil made allegedly disparaging references to a "salesman” working for “Caribe Communications” named “Marino Valdez.” As the dialogue continued, Domeniconi and Gil took phone calls from listeners and made more allegedly disparaging remarks about “Marino Valdez.”
At the time of the program, Marino Valdez (Valdez) was, and continues to be, employed as a salesperson for Caribe Communications. One of Valdez’ responsibilities at Caribe Communications is to sell advertising time on a different Spanish-language radio station.
On June 1, 1994, the plaintiffs filed suit against Domeniconi, Gil, WUNR, and Champion. Valdez brings the following claims against all of the defendants: defamation (Count I), intentional infliction of emotional distress (Count II), intentional interference with business relations (Count III), and intentional interference with contractual relations (Count IV). Valdez’ wife, Lisa Linnea Valdez, brings a loss of consortium claim against the defendants (Count V).
DISCUSSION
A. Discovery Sanctions
Pursuant to Mass.R.Civ.P. 37(b)(2)(C), Champion claims that Valdez’ defamation claim should be dismissed as a discovery sanction. This discovery dispute began over a year ago, when Valdez submitted an English translation of the March 4, 1994 program in response to Champion’s first interrogatory request.[1] From the time the translation was submitted with Valdez’ interrogatory answers, Champion has insisted that the transcript is unresponsive to their first interrogatory. On Dec. 28, 1995, the court (White, J.) allowed Champion’s motion to compel Valdez to high *502 light allegedly defamatory statements. Now, a year later, Champion claims that Valdez’ failure to comply with the December 28, 1995 order warrants the dismissal of his defamation claim as a discovery sanction.
Under Rule 37(b)(2), if a party falls to obey an order to provide discovery, the court may make such orders in regard to the failure as are just. “The consideration to be balanced in deciding a default question for failure to make discovery are, on the one hand, a concern about giving parties their day in court, and, on the other, not so blunting the rules that they may be ignored ‘with impunity.’ ” Greenleaf v. Mass. Bay Trans. Auth., 22 Mass. App. Ct. 426, 429-30 (1986).
Valdez concedes that he did not raise objections in his untimely answers to Champion’s interrogatories, but states the failure was due to the disorder caused by the dissolution of his counsel’s law firm. However, he now maintains that he has responded to Champion’s first interrogatory question, since in his view it is impossible to segregate the allegedly defamatory statements from the rest of Domeniconi’s and Gil’s remarks without losing the substantive meaning of such statements. After reviewing the translated transcripts of the program, I find this argument persuasive.[2] A claimed defect in a discovery order, however, which could have been raised in an opposition to the order for compliance, does not justify noncompliance for over one year. See Roxse Homes Ltd. Partnership v. Roxse Homes, Inc., 399 Mass. 401, 406 (1987).
Under Mass.R.Civ.P. 37 (b)(2), the court may require the party that fails to obey a discovery order to pay the reasonable expenses caused by the failure. The court concludes that $400 is a reasonable sum to be awarded to Champion for Valdez’ noncompliance with the December 28, 1995 discovery order.
B. Summary Judgment
The court will grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that the moving party is entitled to judgment as a matter of law. Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995); Mass.R.Civ.P. 56 (c). The burden on the moving party is to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Flesner v. Technical Communications Corp., 410 Mass. 805, 808-09 (1991) (citations omitted). “This burden need not be met by affirmative evidence negating an essential element of the plaintiffs case, but may be satisfied by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Id., citing Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).

1. Defamation

The use of summary judgment procedures is favored in cases where defamation is alleged. Mulgrew v. Taunton, 410 Mass. 631, 632 (1991), citing King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987), cert denied, 485 U.S. 940, and 485 U.S. 962 (1988). Defendants, however, must still demonstrate the absence of disputed issues of material fact and their entitlement to judgment as a matter of law. Mulgrew, 410 Mass. at 633, citing Godbout v. Cousens 396 Mass. 254, 258 (1985).
Champion claims that it is entitled to summary judgment on Valdez’ defamation claim since he has failed to identify any false or defamatory statements which were made about him on the program. Words may be found to be defamatory if they hold the plaintiff up to contempt, hatred, scorn, or ridicule or tend to impair his standing in the community. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991), citing Poland v. Post Publishing Co., 330 Mass. 701, 703 (1953). To succeed in an action for defamation, a plaintiff must show that the defendant published a defamatory statement “of and concerning” the plaintiff. Eyal, supra, and cases cited.
The conversation between Domeniconi and Gil which apparently refers to Valdez consists of over twenty pages of transcript. In its entirety, the conversation contains statements which are susceptible to defamatory meaning. “If a publication is susceptible of both defamatory meaning and harmless meanings, it presents a question for the trier of fact, and cannot be ruled non-libellous as a matter of law.” King, 400 Mass. at 718, quoting Smith v. Suburban Restaurants, Inc., 374 Mass. 528, 530 (1978). Inferences as to the meaning of a publication which might be drawn by a considerable and respectable segment of the community can make a publication actionable. See King, supra. Valdez has shown that an issue exists as to whether statements made by Domeniconi and Gil on their March 4, 1994, program were defamatory.
Next, Champion claims that it cannot be liable to the plaintiff for the remarks by Domeniconi and Gil under a respondeat superior theory because the two were not employed by Champion. Champion also claims that Valdez cannot prevail on a negligent entrustment theory because there is no evidence that Champion was on notice that the broadcast might harm Valdez. Champion has failed to recognize, however, that a station must use care to determine whether it has a right to censor or control defamatory publications, and if it has such right, it will be liable for uncensored defamatory communications. See Nolan & Sartorio, TortLaw, §127 at 179 (2d ed. 1989).
The summary judgment record shows that Champion uses a seven-second delay system in order to prevent certain material from being aired. A Champion employee with the ability to operate this system is always on duty during programming.[3] In addition, the general manager of Champion testified at her deposi *503 tion that she was in fact listening to the program at the time of the allegedly defamatory remarks and she had the ability to stop improper material from being broadcast. These facts give rise to a possible inference that Champion had the ability to control defamatory remarks from being aired and failed to do so during Domeniconi’s and Gil’s March 4, 1994, program. Compare Pacella v. Milford Radio Corp., 18 Mass.App.Ct. 6, 13-14 (1984) (in case involving public figure, broadcast talk-show host’s allegedly insufficient use of seven-second delay button to prevent broadcast of a caller’s defamatory statement did not amount to “reckless disregard” of whether or not statement was false as a matter of law, and judgment n.o.v. properly granted).[4] Therefore, summary judgment is inappropriate as to Valdez’ defamation claim.[5]

2. Intentional Infliction of Emotional Distress

Count II of Valdez’ complaint charges Champion with intentional infliction of emotional distress. In order to prevail on such a claim, the plaintiff must show: 1) Champion intended the emotional distress or that it knew or should have known that emotional distress would likely result; 2) Champion’s conduct was extreme and outrageous; and 3) the actions caused the Valdezes to suffer severe emotional damage. Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976).
Although Valdez claims that he has suffered severe emotional damage as a result of the allegedly defamatory remarks made on the March 4, 1994, program, he has failed to make out a plausible case of outrageous conduct. See Richey v. American Auto. Assoc., 380 Mass. 835, 838-39 (1980); see also Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987). As discussed above, Champion’s liability to the plaintiff is based on its operation of the seven-second delay system. A trier of fact could not reasonably find that Champion’s actions are “so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.” Richey, 380 Mass. at 838-39, citing Restatement (Second) of Torts §46 Comment d (1965). Since such proof is not likely to be forthcoming at trial, Champion is entitled to summary judgment on Count II.

3. Intentional Interference With Advantageous Business and Contractual Relations

In Count III, Valdez brings a claim for intentional interference with advantageous business relations, and in Count IV he asserts a claim of intentional interference with contractual relations. As their names suggest, the claims are closely related. The elements of the first are: 1) a business relationship or contemplated contract of economic benefit; 2) the defendant’s (here Champion’s) knowledge of such relationship; 3) the defendant’s intentional and improper interference with the relationship; and 4) the plaintiffs loss of advantage directly resulting from the defendant’s conduct. ELM Medical Lab. v. RKO General, Inc., 403 Mass. 779, 787 (1989), citing Comey v. Hill, 387 Mass. 11, 19 (1982).
To prove the second, intentional interference with contractual relations, the plaintiff must prove that: 1) he had a contract with a third party; 2) the defendant knowingly induced the third parly to break the contract; 3) in addition to being intentional, the defendant’s interference was improper in motive or means; and 4) the plaintiff was harmed by the defendant’s actions. G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991), citing United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812 (1990).
Champion claims it is entitled to summary judgment on both of Valdez’ tortious interference claims for the same reason: the plaintiff has not shown any economic harm. The essence of tortious interference claims is damage to a business relationship or contract of economic benefit. See Ratner v. Noble, 35 Mass. App. Ct. 137, 138 (1993) (and cases cited). In this case, Valdez only claims he has suffered severe emotional distress. While recovery for emotional distress may occur as a form of consequential damages in connection with both types of tortious interference claims, there can be no such recovery unless the elements of the torts are established, specifically, actual damage to a business relationship or contemplated or actual contract of economic benefit. See id., citing Restatement (Second) of Torts §§774A, 47 (1977). Since Valdez’ attorney has conceded that Valdez will not be able to prove monetary or economic loss as a result of any loss of business, Valdez will be unable to prove a required element of his tortious interference claims. Therefore, summary judgment will be allowed on Counts III and IV.

4.Loss of Consortium

Where a tort claim of one spouse has been concluded by judgment, an action for loss of consortium by the other spouse’s will not be allowed. See Diaz v. Eli Lilly & Co., 364 Mass. 153, 167 (1973). Because Valdez has a viable defamation claim against Champion, Champion had failed to establish that it is entitled to summary judgment on Lisa Linnea Valdez’ claim for loss of consortium.

ORDER

For the reasons set forth above, it is hereby ORDERED as follows:
1. The plaintiffs are ORDERED to pay Champion $400.00 for failing to comply with the discovery order.
2 Champion’s Motion for Summary Judgment is ALLOWED as to Counts II, III, and IV, and DENIED as to Counts I and V.

 Editor's Note: For another opinion on an unrelated matter in this case see 2 Mass. L. Rptr. No. 31, 627 (December 12, 1994).

 Champion’s first interrogatory question to Valdez is as follows: “Identify each and every statement referred to in the Complaint that you claim is defamatory.”

In addition, Valdez has submitted a certified translation of the allegedly defamatory portion of the program transcript in his Emergency Motion to Supplement Summary Judgment Opposition. The certified translation is more intelligible than the uncertified translation submitted with Valdez’ interrogatory response.

These facts are from the deposition testimony of Patricia S. Domeniconi, the general manager of Champion and the daughter of defendant Domeniconi.

In contrast to the Pacella case cited in the text, there is no claim here that Valdez is a public figure, and therefore he is not required to prove by clear and convincing evidence that Champion acted with knowledge of the falsity of the broadcast statements concerning Valdez, or with reckless disregard of whether they were false or not. See Pacella v. Milford Radio Corp., 18 Mass. App. Ct. 6, 7 (1984).

In the final paragraph of Champion’s reply memorandum, Champion claims for the first time that it is entitled to summary judgment under G.L.c. 231 §91A. Section 91A states that owners and operators of a radio station are not liable for defamatory publications in certain circumstances. It may be that the statute is designed to protect broadcasters from defamation claims based on comments of callers into a program, rather than station personnel. In any event, since Champion has not fully addressed the issue, and for the reasons discussed above, I conclude that Champion has failed to show it is entitled to summary judgment on the ground that §91A bars the defamation claim against it as a matter of law.