Armando A. TROCONIS and
Debra M. Troconis

v.

LUCENT TECHNOLOGIES INC., Rick
Rurak, Joseph Shea, Thomas Popoulo,
John Bresnahan, Marcia Hamilton,
John Lemieux, Al Daigle, Ben Blair,
Andy Abrahamson, Judy Mazzaglia,
Neil Murray, John Ostrowski, and
Richard Devincentis.

No. Civ.A. 01–10086–RGS.

United States District Court,
D. Massachusetts.

Aug. 31, 2001.

152

Frederick T. Golder, Jeffrey R. Mazer, Bernstein, Golder & Miller, P.A., Lynnfield, MA, for Armondo A. Troconis, Debra M. Troconis.

Gregory C. Keating, Palmer & Dodge, Boston, MA, Thomas E. Shirley, Karen D. Lane, Gregory C. Keating, Choate, Hall & Stewart, Boston, MA, for Lucent Technologies, Inc., Rick Rurak, Joseph Shea, Thomas Popoulo, John T. Bresnahan, Jr., Marcia Hamilton, John Lemieux, Al Daigle, Ben Blair.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

STEARNS, District Judge.

Plaintiffs Armando and Debra Troconis brought this action against Lucent Technologies, Inc. (Lucent), and thirteen current or former Lucent employees, all of whom are alleged to have discriminated in various ways against Armando Troconis. The case was originally filed in Essex Superior Court. Defendants, contending that two of the five counts of the Complaint are preempted by section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), removed the case to the federal district court on federal question grounds. In this opinion, I will briefly explain why the doctrine of preemption authorizes the removal. I will then dismiss the two preempted counts of the Complaint, and for reasons that will be explained, I will remand a difficult matter of State law and the associated state claims to the Superior Court for resolution.

### BACKGROUND

Troconis was employed for twenty years by Western Electric, American Telephone & Telegraph (AT & T), and Lucent, each a successor company to the other. Troconis is a member of, and represented by, the Communications Workers of America (the Union). The Union and Lucent are parties to a comprehensive collective bargaining agreement (CBA), which expires on May 21, 2003.

On April 12, 1991, Troconis injured his back while at work. From 1991 to 1996, Troconis received "conservative" medical treatment for his back problems and continued his regular employment. From July 24, 1996, to November 25, 1996, Troconis took leave under the Family & Medical Leave Act to undergo back surgery. While recuperating, Troconis received a letter from his supervisor stating that his job was at risk because of his absence. Troconis's pay was subsequently withheld.

Upon returning to work, Troconis orally requested that Lucent accommodate his back condition by providing him with a chair with arms and lumbar support and a parking space closer to his work station to "prevent slipping and falling during the winter months." Troconis claims that these informal requests were ignored. On February 11 and 25, 1997, Troconis renewed his requests in writing to Sheila Landers, a Lucent Human Resources Officer. Troconis received the chair in March. Troconis was also assigned a more desirable parking space, although he lost it on March 21, 1997, the first day of spring. Troconis is currently on paid medical leave from Lucent.

On March 12, 1999, Troconis filed a Charge of Discrimination (Charge) with the Massachusetts Commission Against Discrimination (MCAD), naming Lucent as the respondent. On the intake form, Troconis listed "national origin" as the basis of his Charge. Specifically, Troconis stated:

[f]or the last several years I have been subjected to repeated harassment based on my national origin (Hispanic, native of Venezuela). I have been subjected to repeated practical jokes, harassing comments, and I have complained about these to upper level management without result. Recently, in retaliation for

my complaining about the harassment I have been receiving from my co-workers and supervisors, I was given warning and discipline. I charge the company with unlawful harassment and discrimination because of my national origin.

On April 21, 1999, Lucent submitted a "Statement of Position" denying Troconis's allegations of national origin discrimination. Troconis, through counsel, filed a "Statement of Rebuttal" with the MCAD dated May 12, 1999, neglecting, however, to serve a copy on Lucent. On October 5, 1999, Troconis moved to amend the Charge to include an allegation of disability discrimination and to add the thirteen individual defendants as respondents. While the motion to amend was served on one of the individual defendants, Marcia Hamilton, an Equal Employment Opportunity Commission (EEOC) specialist at Lucent, the remaining twelve defendants were not served or otherwise apprised of the motion. Troconis asked the MCAD to act on the motion to amend by letters dated October 5, 1999, November 19, 1999, December 23, 1999, February 17, 2000, March 2, 2000, June 8, 2000, July 17, 2000, and August 11, 2000. By letter dated July 26, 2000, the MCAD directed Lucent to respond to the motion. Lucent did so by a letter dated August 6, 2000. On August 22, 2000, before the MCAD had acted on either the Charge or the motion to amend, Troconis sought leave from the MCAD to pursue a civil action. The MCAD accordingly dismissed the Charge on September 21, 2000.

Troconis and his wife filed this action against Lucent and the thirteen individual defendants in Essex Superior Court on December 18, 2000. The Complaint sets out five counts: Count I: violation of M.G.L. c. 151B (national origin discrimination, handicap discrimination, and retaliation); Count II: violation of M.G.L. c. 93, §§ 102, 103 (the State Equal Rights Act); Count III: violation of M.G.L. c. 152, §§ 75A, 75B (discrimination and retaliation under the Workers' Compensation Law); Count IV: intentional interference with advantageous contractual relations; and Count V: loss of consortium. Counts I–IV are brought by Armando Troconis; Count V is brought by his wife, Debra.

## LMRA PREEMPTION AND REMOVAL

■ Section 301 of the LMRA confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). "Section 301 completely preempts a state law claim 'if the resolution of [the] state-law claim depends upon the meaning of a collective bargaining agreement.'"[1] *Magerer v. John Sexton & Co.*, 912 F.2d 525, 528 (1st Cir.1990), quoting *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 405–406, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

A state-law claim can "depend" on the "meaning" of a collective bargaining agreement in two ways. First, a claim

1. Complete preemption should not be confused with exclusive federal jurisdiction. *See e.g.*, ERISA, 29 U.S.C. § 1132(e)(1). While the LMRA preempts State law, and therefore claims predicated upon State law, it does not oust the concurrent jurisdiction of state courts to adjudicate LMRA-dependent claims. *See United Steelworkers v. Rawson*, 495 U.S. 362, 368, 110 S.Ct. 1904, 109 L.Ed.2d 362

(1990). As a practical matter, this is of little import as defendant employers, as here, almost always remove LMRA cases to the federal district court. Also of significance to the procedure followed by defendants in this case is the statutory provision permitting the removal of most nonremovable claims when these are joined in state court with removable claims. *See* 28 U.S.C. § 1441(c).

so qualifies if it alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement. *See United Steelworkers v. Rawson,* 495 U.S. 362, 369, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990) ("[A] state-law tort action against an employer may be preempted by § 301 if the duty to the employee of which the tort is a violation is created by a collective-bargaining agreement and without existence independent of the agreement"). Second, a claim so qualifies if its resolution arguably hinges upon an interpretation of the collective bargaining agreement. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (finding section 301 preemption "when resolution of a state-law claim is substantially dependent upon analysis of the term of an agreement made between the parties in a labor contract"). If a state-law claim depends on the meaning of the collective bargaining agreement in either of these ways—that is, under *Rawson*'s "duty" rubric or under *Allis–Chalmers*'s "interpretation" rubric—it is preempted.

*Flibotte v. Pennsylvania Truck Lines, Inc.,* 131 F.3d 21, 26 (1st Cir.1997).

■ Complete preemption is not, however, a doctrine without limitations.[2] The degree to which a state law claim depends upon an understanding of the CBA requires careful judicial analysis. "Courts confronted with state law claims must ... locate the line between the need for mere consultation of a CBA, which does not demand federal preemption, and more active interpretation of

that agreement, which does preempt the state law claims." *Lydon v. Boston Sand & Gravel Co.,* 175 F.3d 6, 10 (1st Cir.1999). See also *Livadas v. Bradshaw,* 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93, (1994) (checking wage rates set forth in the CBA does not rise to interpretation). As we have put it, a "real interpretive dispute" regarding the CBA must exist for other claims to be preempted. *Martin v. Shaw's Supermarkets, Inc.,* 105 F.3d 40, 42 (1st Cir. 1997).

*Fant v. New England Power Serv. Co.,* 239 F.3d 8, 15 (1st Cir.2001). In parsing a State law claim for section 301 preemption, a court is not required, however, to identify an actual conflict between State law and the terms of a CBA; it must only ascertain that the potential of a conflict requiring interpretation of the CBA exists. *Martin,* 105 F.3d at 44.

■ At first blush, the removal of Count III, which alleges discrimination and retaliation in connection with Troconis's application for workers' compensation benefits, would appear to be precluded by 28 U.S.C. § 1445(c), which states that "a civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." However, the protections of M.G.L. c. 152, § 75B, are expressly "subordinate to the terms of a collective bargaining agreement." *Fant,* 239 F.3d at 14 (noting that section 75B(3) provides that "[i]n the event that any right set forth in this section is inconsistent with an applicable collective bargaining agreement, such agreement shall prevail"). This language "makes clear that to the

---

2. Purely factual questions regarding an employer's or an employee's conduct or motive, for example, do not require interpretation of a CBA. *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 261, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). Nor does section 301 preempt "nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw,* 512 U.S. 107, 123, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).

extent that the [CBA] provides standards to govern the conduct underlying plaintiff's ... claim, the claim will be governed by the standards of the agreement, rather than by the standards of ch. 152 § 75B. And to that extent, claims under section 75B will require interpretation of the agreement and, therefore, will be preempted by Section 301." *Magerer*, 912 F.2d at 529.

Count III of the Complaint alleges that defendants "retaliated, harassed and discriminated against Troconis because he sought benefits for workers' compensation." Count III incorporates the factual allegations of Count I, which detail various alleged incidents of harassment suffered by Troconis at the hands of supervisors and co-workers,[3] as well as the supposed failures of Lucent management to respond to his grievances. These, however, do little to amplify Count III, the allegations of which are not referenced in any of the alleged facts. Of more immediate relevance is the CBA itself, which endows Lucent with "[t]he right to manage the business and to direct the working forces and operation of the business." The CBA also contains grievance and arbitration clauses permitting an employee to grieve, and subsequently arbitrate, any issue "arising with respect to the interpretation or application of this Agreement or other terms and conditions of employment." These and other provisions governing

medical leave, absences, demotion, job reclassification, and acts of employer or Union discrimination, would clearly require interpretation of the CBA to determine whether a conflict exists between its detailed norms and the more general standards of section 75B. *See Martin*, 105 F.3d at 43–44. *Cf. Adames v. Executive Airlines, Inc.*, 258 F.3d 7, 2001 WL 792750 (1st Cir., July 19, 2001). Therefore, Count III is preempted.

 Count IV of the Complaint alleges that the collective defendants "intentionally, wrongfully, improperly, and maliciously interfered with Troconis's employment with [Lucent] ... for unlawful, improper, and malicious reasons."[4] As defendants point out, the only contract of employment that Troconis has with Lucent is the one established by the CBA. Whether the individual defendants in fact, through their alleged acts of harassment, violated duties imposed by the CBA (for example, whether the nondiscrimination clause, which binds the Union as well as management, is also binding on Union members) would manifestly require interpretation of the CBA. Count IV, therefore, is also preempted.[5]

## THE CHAPTER 151B CLAIMS

 I turn now to the more difficult issue raised by Count I. The reader will

---

3. These include a supervisor's "padding" of Troconis's personnel file "with derogatory memos that were not in accordance with [the] union collective bargaining agreement," and an unsuccessful attempt by management to thwart Troconis's right to union representation at a disciplinary proceeding.

4. Lucent cannot as a matter of law be held liable for interfering with an employment contract to which it is a party. *Harrison v. NetCentric Corp.*, 433 Mass. 465, 477–478, 744 N.E.2d 622 (2001). Plaintiffs' counsel admitted at oral argument that the claim for inten-

tional interference against Lucent could not stand.

5. Apart from preemption, it is doubtful that Troconis could show damage to his economic interests as a result of the alleged interference, a necessary element of the tort, as he has not been terminated by Lucent or suffered any lay-off or diminution in pay. *See United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 816 n. 7, 551 N.E.2d 20 (1990); *Ratner v. Noble*, 35 Mass.App.Ct. 137, 139, 617 N.E.2d 649 (1993).

recall Troconis's unrequited endeavors to prod the MCAD into acting on his motion to amend the Charge and to name the thirteen individual defendants whom he alleges harassed him.[6] The individual defendants contend that because Troconis, for whatever reason, failed to perfect his Charge, they did not have the notice and opportunity to participate in the MCAD's conciliation process to which they are entitled.[7] Lucent makes the same point with respect to Troconis's attempted claim of disability discrimination.

■ The rule requiring the naming of a respondent in an MCAD Charge is intended to promote the resolution of claims without litigation. *See Davis v. Lucent Technologies, Inc.,* 251 F.3d 227, 231 (1st Cir.2001); *Fant,* 239 F.3d at 11; *Conroy v. Boston Edison Company,* 758 F.Supp. 54, 57 (D.Mass.1991); *Carter v. Commissioner of Correction,* 43 Mass.App.Ct. 212, 217, 681 N.E.2d 1255 (1997). The individual defendants now named in Troconis's lawsuit were undisputedly deprived of the opportunity to present their case to the MCAD or to seek conciliation as an alternative to the rigors and expense of litigation.[8]

Lucent stands on somewhat different footing, having received and responded to the motion to amend. *See Chapin v. University of Massachusetts at Lowell,* 977 F.Supp. 72, 76 (D.Mass.1997); *Hayes v. Henri Bendel,* 945 F.Supp. 374, 378–379 (D.Mass.1996). Thus, Troconis argues that Lucent had a ten month opportunity to investigate and conciliate his handicap discrimination claims. Lucent acknowledges as much, but claims that Troconis's handicap discrimination claim is time-barred. Troconis for his part maintains that occurrences of disability discrimination "worsened" when he returned from medical leave on November 25, 1996, as an MCAD investigation, had one ever been undertaken, would have disclosed. *See Davis,* 251 F.3d at 233.

Troconis's frustration with the apparent dysfunctional response of the MCAD to his efforts to amend the substance and to grow the population of his Charge, raises a difficult issue that has divided the Superior Court, namely whether the failure to name an individual defendant in a Charge, or to persuade the MCAD to act on an attempt to do so, is fatal to a subsequent action under c. 151B. *Compare Mitchell v. New England Home for Little Wanderers, Inc.,* 1999 WL 475970 (Mass.Super., June 29, 1999) (despite the MCAD's inaction on a motion to amend, the failure to properly name individual defendants precluded their being named in a c. 151B suit) *and Avery v. PTP, Inc.,* 1998 WL 1181680 (Mass.Super., Nov.24, 1998) (failure to name individual defendants in the Charge barred suit under c. 151B) *and Albee v. New England Medical Center Hospitals, Inc.,* 1997 WL 691524 (Mass.Super., Oct.30, 1997) (despite employee's knowledge of an internal employer investigation,

---

**6.** Unlike federal Title VII, where the matter is unresolved, *Serapion v. Martinez,* 119 F.3d 982, 992 (1st Cir.1997), c. 151B permits the naming of individual defendants under a theory of aiding and abetting. *Beaupre v. Cliff Smith & Assocs.,* 50 Mass.App.Ct. 480, 490–491, 738 N.E.2d 753 (2000).

**7.** Troconis maintains that because the individual defendants were identified in his Rebuttal to Lucent's Statement of Position, they should be held to constructive notice of his claims.

Lucent, however, states that it never received a copy of the Rebuttal.

**8.** The possible exception is Marcia Hamilton, the Lucent EEOC officer to whom the MCAD directed a copy of the proposed amendment of the Charge. Hamilton, however, argues that she had no obligation to respond personally to the Charge unless or until the MCAD acted on Troconis's motion to amend.

the lack of notice or opportunity to participate in the MCAD conciliation process was fatal to a c. 151B suit) *with Kuketz v. MDC Fitness Corp.*, 1998 WL 1119863 (Mass.Super., Aug.10, 1998) (although the MCAD failed to act on a motion to amend, c. 151B defendant had actual notice of the charge) *and Sobotka v. Westfield Savings Bank*, 1994 WL 879775 (Mass.Super., April 21, 1994) (same).

Federal courts addressing the issue have assumed that the Supreme Judicial Court would recognize an exception permitting a c. 151B suit against an individual defendant who is not named in an MCAD Charge where the defendant had actual notice of and the opportunity to conciliate the claim. *See, e.g., McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 504–505 (1st Cir.1996); *Chatman v. Gentle Dental Center of Waltham*, 973 F.Supp. 228, 233–235 (D.Mass.1997). At least one Massachusetts Appeals Court case appears sympathetic to this view, *see King v. First*, 46 Mass.App.Ct. 372, 374–375, 705 N.E.2d 1172 (1999), although in *King* no exception was found where the plaintiff could not demonstrate that the respondent was acting as the agent of the unnamed defendant, or that the identity of the individual defendant could not have been ascertained before or after the filing of the MCAD Charge. While identity is not at issue here, the implications of the MCAD's inaction in the face of Troconis's exertions, as well as the issue whether Lucent, which did receive notice of Troconis's motion to amend, would be held to a duty of constructive agency, are very much alive and very much unresolved.

 When an action is removed in its entirety under § 1441(c), a federal court "may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates." The case for remand is compelling when the foundational federal claims have been dismissed early in the litigation. At that point, the court

> must reassess its jurisdiction, ... engaging in a pragmatic and case-specific evaluation of a variety of considerations that may bear on the issue. *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256–57 (1st Cir.1996). Among the factors that will often prove relevant to this calculation are the interests of fairness, judicial economy, convenience, and comity. *Id.* Comity is a particularly important concern in these cases. As the Supreme Court observed in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not unsubstantial in a jurisdictional sense, the state claims should be dismissed as well.

Accordingly, the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.

*Camelio v. American Federation*, 137 F.3d 666, 672 (1st Cir.1998). An even more compelling case for remand is presented when the remaining State claims, as here, "raise substantial questions of state law that are best resolved in state court." *Id. See also Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349–351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). For reasons of comity and respect for the superior ability of the Massachusetts state courts to address deli-

cate issues of State law, Count I, II and V will be remanded to the Superior Court.[9]

### ORDER

For the foregoing reasons, Counts III and IV are *DISMISSED* as preempted by federal law. Counts I, II and V are *RE-MANDED* to the Superior Court for resolution.

SO ORDERED.

---

**9.** I have not dismissed Count II, which alleges a violation of the State Equal Rights Act, in conformity with the counsel of *Camelio,* 137 F.3d at 672 (finding error in the district court's partial adjudication of state claims prior to remanding others), although I note that Count II appears to be clearly precluded by State law. *See Agin v. Federal White Cement, Inc.,* 417 Mass. 669, 672, 632 N.E.2d 1197 (1994). *See also Woods v. Friction Materials, Inc.,* 30 F.3d 255, 264 (1st Cir.1994). Count V, which alleges a loss of consortium on behalf of Mrs. Troconis, may be similarly vulnerable. *See Zhang v. Massachusetts Institute of Technology,* 46 Mass.App.Ct. 597, 606–607, 708 N.E.2d 128 (1999).